UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. ROBERT D. HAAR, M.D., | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : Civil Action No. 1:17-cv-05425 (LAK) |
| NATIONWIDE MUTUAL FIRE INSURANCE | : |
| CO., JOHN AND JANE DOE CORPS 1-10, and | : |
| JOHN AND JANE DOES 1-10, | : |
| | : |
| Defendants. | : |
| | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONWIDE MUTUAL FIRE INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Dated: New York, New York
August 25, 2017

DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
(212) 692-1000

*Attorneys for Defendant*
*Nationwide Mutual Fire Insurance Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF COMPLAINT ALLEGATIONS........................................................... 3

ARGUMENT ................................................................................................................... 6

    I.     STANDARDS APPLICABLE TO THIS MOTION ................................. 6

    II.    PLAINTIFF'S CLAIM RELATING TO THE OPMC COMPLAINT IS NOT LEGALLY COGNIZABLE. ....................................................... 7

          A.    No Private Right of Action Exists. .............................................. 7

          B.    The Noerr-Pennington Doctrine Precludes Plaintiff's Causes of Action........................................................................................ 9

    III.   PLAINTIFF'S SECOND CAUSE OF ACTION FOR DEFAMATION SHOULD BE DISMISSED AS A MATTER OF LAW. ..................................... 11

          A.    Nationwide's Complaint to the OPMC Is Protected by an Absolute Privilege. ................................................................................. 11

          B.    Because Complaints to OPMC Are Strictly Confidential, Plaintiff's Allegations of Defamation Are Not Plausible. .......................... 15

          C.    The Alleged Statements to the OPMC Do Not Satisfy the Elements for Defamation. ....................................................................... 17

               1.    The Allegations Are Expressions of Opinions and Not Statements of Fact. .......................................... 18

               2.    No Defamatory Statements Were Published.................................. 21

          D.    Plaintiff's Defamation Claim is Time Barred............................ 22

CONCLUSION.............................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Able Energy, Inc. v. Marcum & Kliegman LLP,*
    69 A.D.3d 443, 893 N.Y.S.2d 36 (1st Dep't 2010) ................................................14

*Alcena v. Empire Blue Cross & Blue Shield,*
    13 A.D.3d 472, 787 N.Y.S.2d 91 (2d Dep't 2004) ................................................16

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.,*
    268 A.D.2d 101, 707 N.Y.S.2d 647 (2d Dep't 2000) ....................................... 10-11

*Allan & Allan Arts Ltd. v. Rosenblum,*
    201 A.D.2d 136, 615 N.Y.S.2d 410 (2d Dep't 1994) ...........................................12

*Anghel v. N.Y.S. Dep't of Health,*
    947 F. Supp. 2d 284 (E.D.N.Y. 2013), *aff'd,* 589 F. App'x 28 (2d Cir. 2015),
    *cert. denied*, 135 S. Ct. 2896 (2015) .................................................................13

*Anonymous v. Bureau of Prof'l Med. Conduct/State Bd. for Prof'l Conduct,*
    2 N.Y.3d 663, 781 N.Y.S.2d 270 (2004) .............................................................16

*Applewhite v. Briber,*
    506 F.3d 181 (2d Cir. 2007).................................................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................... 6-7, 21

*Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,*
    155 F.3d 59 (2d Cir. 1998)..................................................................................23

*Axelrod v. Sobol,*
    78 N.Y.2d 112, 571 N.Y.S.2d 902 (1991) ...........................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................... 6-7

*Brian v. Richardson,*
    87 N.Y.2d 46, 637 N.Y.S.2d 347 (1995) ........................................................18, 20

*Caesars Entm't Operating Co. v. Appaloosa Inv. Ltd. P'ship I,*
    48 Misc. 3d 1212(A), 2015 WL 4430268 (Sup. Ct. N.Y. Co. 2015)....................9, 10

*Celle v. Filipino Reporter Enters. Inc.,*
    209 F.3d 163 (2d Cir. 2000)...............................................................................18

**Page(s)**

*Chalasani v. Daines*,
No. 10 CV 1978 (RRM)(RML), 2011 WL 4465564 (E.D.N.Y. June 30, 2011) .................... 16

*Cicconi v. McGinn, Smith & Co.*,
27 A.D.3d 59, 808 N.Y.S.2d 604 (1st Dep't 2005) ............................................................... 13

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ..................................................................................................... 23

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) ................................................................................................... 23

*Dr. Reddy's Labs., Ltd. v. Aaipharma Inc.*,
No. 01 Civ. 10102 (LAP), 2002 WL 31059289 (S.D.N.Y. Sept. 13, 2002) ....................... 9, 11

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ............................................................................................................... 10

*Ellison v. Evans*,
No. 13 Civ. 885 (KBF), 2013 WL 5863545 (S.D.N.Y. Oct. 31, 2013), *aff'd
sub nom. Fuller v. Evans*, 586 F. App'x 825 (2d Cir. 2014),
*cert. denied*, 135 S. Ct. 2807 (2015) .................................................................................... 23

*Foong v. Empire Blue Cross & Blue Shield*,
305 A.D.2d 330, 762 N.Y.S.2d 348 (1st Dep't 2003) ............................................................ 9

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
669 F. Supp. 2d 405 (S.D.N.Y. 2009) .................................................................................... 23

*Gotbetter v. Dow Jones & Co.*,
259 A.D.2d 335, 687 N.Y.S.2d 43 (1st Dep't 1999) .............................................................. 21

*Gross v. New York Times Co.*,
82 N.Y.2d 146, 603 N.Y.S.2d 813 (1993) .............................................................................. 18

*Herzfeld & Stern, Inc. v. Beck*,
175 A.D.2d 689, 572 N.Y.S.2d 683 (1st Dep't 1991) ............................................................ 14

*Hotchner v. Castillo-Puche*,
551 F.2d 910 (2d Cir. 1977) ................................................................................................... 18

*Icahn v. Raynor*,
32 Misc. 3d 1224(A), 2011 WL 3250417 (Sup. Ct. N.Y. Co. June, 16 2011),
*aff'd sub nom. Nineteen Eighty-Nine, LLC v. Icahn Enters. L.P.*,
99 A.D.3d 546, 953 N.Y.S.2d 4 (1st Dep't 2012) ................................................................... 9

**Page(s)**

*Jacobs v. Oppenheim*,
    No. 12-CV-7259 (VB), 2015 WL 5460104 (S.D.N.Y. June 17, 2015) ........................... 20, 22

*Karedes v. Ackerley Grp., Inc.*,
    423 F.3d 107 (2d Cir. 2005) ................................................................................................ 17

*Koch v. Sheehan*,
    21 N.Y.3d 697, 976 N.Y.S.2d 4 (2013) .............................................................................. 13

*Lenz v. Young*,
    492 F. App'x 145 (2d Cir. 2012) ........................................................................................ 21

*Lesesne v. Brimecome*,
    918 F. Supp. 2d 221 (S.D.N.Y. 2013) ........................................................................... 2, 7-9

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997) .......................................................................................... 18, 19

*LightSquared Inc. v. Deere & Co.*,
    No. 13 Civ. 8157 (RMB), 2014 WL 345270 (S.D.N.Y. Jan. 31, 2014) ............................... 10

*Mann v. Abel*,
    10 N.Y.3d 271, 856 N.Y.S.2d 31 (2008) ............................................................................. 18

*Michaelis v. Graziano*,
    5 N.Y.3d 317, 801 N.Y.S.2d 790 (2005) ............................................................................. 16

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ................................................................................................. 6

*Munoz-Nagel v. Guess, Inc.*,
    No. 12-CV-1312 (ER), 2013 WL 1809772 (S.D.N.Y. Apr. 30, 2013) ............................ 7, 17

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ............................................................................................................. 10

*Protic v. Dengler*,
    46 F. Supp. 2d 277, 281 (S.D.N.Y. 1999) *aff'd*, 205 F.3d 1324 (2d Cir. 1999) ............... 19-20

*Rosenberg v. MetLife, Inc.*,
    8 N.Y.3d 359, 834 N.Y.S.2d 494 (2007) ............................................................................. 12

*Sanchez v. Velez*,
    No. 08 Civ. 1519 (NRB), 2009 WL 2252319 (S.D.N.Y. July 24, 2009) ......................... 23-24

*Shapira v. Charles Schwab & Co.*,
    187 F. Supp. 2d 188 (S.D.N.Y. 2002) ................................................................................. 12

iv

**Page(s)**

*Sieger v. Union of Orthodox Rabbis of U.S. and Canada, Inc.*,
  1 A.D.3d 180, 767 N.Y.S.2d 78 (2003) ........................................................................... 21-22

*Singh v. NYCTL 2009-A Trust*,
  683 F. App'x 76 (2d Cir. Mar. 21, 2017) ............................................................................10

*State Farm v. Mallela*,
  4 N.Y.3d 313 (2005) ........................................................................................................5, 19

*Stega v. N.Y. Downtown Hosp.*,
  148 A.D.3d 21, 44 N.Y.S.3d 417 (1st Dep't 2017) ............................................................14

*Stilsing Elec., Inc. v. Joyce*,
  113 A.D.2d 353, 495 N.Y.S.2d 999 (3d Dep't 1985) .........................................................14

*Titan Cap. Grp. II, LLC, v. Raghavan*,
  19 Misc. 3d 1115(A), 2008 WL 921026 (Sup. Ct. N.Y. Co. 2008)................................. 20-21

*Wiener v. Weintraub*,
  22 N.Y.2d 330, 292 N.Y.S.2d 667 (1968) .........................................................................14

*Yukos Capital S.A.R.L. v. Feldman*,
  No. 15-cv-4964 (LAK), 2016 WL 183360 (S.D.N.Y. Jan. 11, 2016) ...................................17

**Statutes and Regulations**

11 N.Y.C.R.R. § 65-3.16(a)(12) .............................................................................................5

11 N.Y.C.R.R. § 68.8(a) ................................................................................................ 1, 14-15

11 N.Y.C.R.R. § 68.8(a)(1)(i) ................................................................................................15

Fed. R. Civ. P. 8 ....................................................................................................................17

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 6

N.Y. C.P.L.R. § 215(3) ..........................................................................................................22

N.Y. Pub. Health Law § 230 ..........................................................................................*Passim*

U.S. Const. Amend. I ..............................................................................................................9

Defendant Nationwide Mutual Fire Insurance Company ("Nationwide" or "Defendant"), respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Dr. Robert D. Haar, M.D. ("Dr. Haar" or "Plaintiff"), in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

On February 29, 2012, the U.S. Attorney for the Southern District of New York announced charges against numerous individuals, including ten licensed doctors, for participating in a $279 million no-fault automobile insurance fraud scheme.[1]  This criminal case reflects the enormous cost for consumers associated with no-fault insurance fraud.  New York State law, however, provides certain weapons for insurers to combat such fraud.  For example, New York's Regulation 83 mandates that the insurer shall report any pattern of overcharging, excessive treatment or any other improper actions by a health provider to the New York State Department of Financial Services and the Department of Health ("DOH").  *See* 11 N.Y.C.R.R. § 68.8(a).

Of particular relevance to the instant lawsuit, New York Public Health Law provides that any insurer who reports or provides information in good faith to the DOH's Office of Professional Medical Conduct (the "OPMC") shall not be subject to civil damages or other relief as a result of such report.  *See* N.Y. Pub. Health Law § 230(11)(b) (McKinney 2012 & Supp. 2017).  The instant lawsuit centers around such a report, dated October 2, 2012, from Nationwide to the OPMC regarding suspected no-fault insurance fraud.

---

[1]    *See* Press Release, U.S. Attorney's Office for the Southern District of New York, Manhattan U.S. Attorney Announces Charges Against 36 Individuals for Participating in $279 Million Health Care Fraud Scheme (Feb. 29, 2012), https://www.justice.gov/archive/usao/nys/pressreleases/February12/zemlyanskymikhailetalindictment.html.

By Verified Complaint dated June 6, 2017 ("Complaint"),[2] Plaintiff commenced this action against Nationwide in the Supreme Court of the State of New York, County of New York and asserted two causes of action:  (1) filing complaints with the OPMC without good faith basis; and (2) defamation.  On July 18, 2017, Nationwide timely removed this case to federal court.  (ECF Doc. No. 1.)  According to Dr. Haar, Nationwide filed the complaints with the OPMC for medical treatment provided in late 2012 and early 2013.  The Complaint further alleges that Nationwide submitted complaints to the OPMC in or about July 2016.  (Compl. ¶ 49.)  However, Dr. Haar does not and cannot know the substance or the date of Nationwide's OPMC complaint because N.Y. Pub. Health Law § 230(11) requires strict confidentiality.  Dr. Haar's allegations as to the substance of Nationwide's complaint to the OPMC (as well as the date of the complaint), therefore, are all based upon "information and belief."[3]

Dr. Haar's Complaint against Nationwide, as alleged "upon information and belief," is legally deficient in a number of aspects.  Looking to Dr. Haar's "First Cause of Action," he labels it as "Filing Complaints With OPMC Without Good Faith Basis."  (Compl. ¶¶ 117-21.)  A court in this District, however, has held that no private right of action exists for filing an OPMC complaint, even if bad faith is alleged.  Specifically, in *Lesesne v. Brimecome*, 918 F. Supp. 2d 221 (S.D.N.Y. 2013) (Nathan, J.), the court cogently analyzed the factors governing the creation of an implied right of action and concluded that the legislative purposes behind the enactment of N.Y. Pub. Health Law § 230(11) did not support such an implied private right of action.  Furthermore, also regarding the First Cause of Action, Dr. Haar's claim is prohibited by the

---

[2]     For the Court's convenience, a copy of the Complaint (ECF Doc. No. 1-1) is annexed to the accompanying Declaration of Andrew T. Hahn, Sr. Esq., executed on August 25, 2017 (cited as "Hahn Decl."), as Exhibit "A".

[3]     Upon the request of this Court, Nationwide will submit an unredacted copy of its OPMC complaint form for *in camera* inspection.

*Noerr-Pennington* doctrine, which immunizes Nationwide for petitioning the government to investigate Dr. Haar.

Dr. Haar's "Second Cause of Action" for defamation is also legally deficient on numerous grounds.  First, any complaint submitted to the OPMC by an insurer concerning a physician is protected by an absolute privilege.  Second, because the OPMC investigation and reporting process are confidential, Plaintiff cannot plausibly plead under the applicable *Twombly/Iqbal* standards what specific defamatory statements were made.  Third, even assuming those defamatory statements were plausibly alleged, they constitute non-actionable expressions of opinion and/or legal conclusions.  Fourth, because of such strict confidentiality protections of the OPMC investigation, Plaintiff cannot satisfy the requirement of publication.  Finally, because the OPMC complaint was submitted in October 2012, the one-year statute of limitations bars Plaintiff's defamation claim.  For these reasons, the Complaint, including its two "Causes of Action," should be dismissed in its entirety.

## SUMMARY OF COMPLAINT ALLEGATIONS

The Complaint alleges that that Nationwide made false and defamatory statements about Dr. Haar to the OPMC.  (Compl. ¶ 1.)  Dr. Haar further contends that he provided pre- and post-operative surgical medical treatment to individual patients involved in automobile accidents where Nationwide was the automobile insurer.  (Compl. ¶ 10.)  Dr. Haar identifies four patients (collectively referred to as "Individual Patients"), whom he treated between 2012 and 2013.  (*Id.*)  The following summarizes the allegations of the Complaint with respect to the Individual Patients:

Patient 1

Dr. Haar submitted a claim to Nationwide for medical treatment provided to Patient 1 for knee and shoulder injuries.  (Compl. ¶¶ 17-18.)  Nationwide denied the claim in its entirety. (Compl. ¶ 21.)  Nationwide provided Dr. Haar with a Peer Review Report which concluded that no "cause and effect relationship" existed between the car accident and the medical treatment provided to Patient 1.  (Compl. ¶ 25.)  The Peer Review Report did not criticize or take issue with any medical treatment to Patient 1 by Dr. Haar.  (Compl. ¶ 24.)

Patients 2, 3, and 4

The allegations in the Complaint with respect to Patients 2, 3, and 4 are virtually identical.  According to the Complaint, Dr. Haar and/or his medical practice provided medical treatment to each of these three patients for shoulder injuries.  (Compl. ¶¶ 26, 34, 42.)  One or more claims were submitted to Nationwide.  (Compl. ¶¶ 27, 35, 43.)  Nationwide partially denied each claim.  (Compl. ¶¶ 30, 38, 45.)  The Explanation of Benefits ("EOB") from Nationwide did not criticize or take issue with any medical treatment provided by Dr. Haar.  (Compl. ¶¶ 31, 39, 46.)  The EOBs explained that Nationwide was paying less than the full amount billed based on the "fee schedule" applicable to New York State No-Fault Insurance claims.  (Compl. ¶¶ 32, 40, 47.)

Dr. Haar's allegations with respect to Nationwide's complaint to the OPMC are all based "upon information and belief."  Specifically, the Complaint alleges "upon information and belief" the following:

• Nationwide told the OPMC that the amount of time that Dr. Haar expended in performing surgical procedures on each of the Individual Patients was insufficient given the nature and complexity of the surgeries performed.  (Compl. ¶ 50.)

• Nationwide told the OPMC that Patients 1, 2, and 3 received unnecessary post-operative anesthetic treatment that was improper, and that Dr. Haar was responsible for their receiving this allegedly improper treatment.  (Compl. ¶ 51.)

4

- Nationwide told the OPMC that the surgical procedure performed on Patient 2 was performed prematurely.  (Compl. ¶ 52.)

- Nationwide told the OPMC that certain professional corporations owned by him were "fraudulently incorporated" within the meaning of 11 N.Y.C.R.R. § 65-3.16(a)(12), and *State Farm v. Mallela*, 4 N.Y.3d 313 (2005).  (Compl. ¶ 53.)

- Nationwide told the OPMC that Dr. Haar's employment status with certain professional corporations owned by him rendered the professional corporations ineligible to receive payment of no-fault claims pursuant to 11 N.Y.C.R.R. § 65- 3.16(a)(l2), and *State Farm v. Mallela*, 4 N.Y.3d 313 (2005).  (Compl. ¶ 54.)[4]

Dr. Haar characterizes the foregoing allegations – made solely upon "information and belief" – as "False Complaints."  (Compl. ¶¶ 55-56.)  The Complaint further alleges that Nationwide acted without a good-faith basis in filing the purported False Complaints with the OPMC.  (Compl. ¶¶ 57-58; 71-74.)  Specifically, Dr. Haar claims that Nationwide could have requested "verification" or additional details permitted under New York No-Fault Law.  (Compl. ¶¶ 75-80.)  According to Dr. Haar, as part of the verification process, Nationwide could have requested an independent medical examination ("IME") or an examination under oath ("EUO").  (Compl. ¶¶ 81-87.)  Dr. Haar alleges that Nationwide conducted a Peer Review of Patient 1 but did not do so for Patients 2, 3, and 4.  (Compl. ¶¶ 83-85.)  Dr. Haar also complains that Nationwide did not conduct an EUO of the Individual Patients, Dr. Haar himself, or any others involved with the provision of medical services to the Individual Patients.  (Compl. ¶¶ 88-94.)  Nationwide also allegedly failed to seek verification documents or other information with respect to whether Dr. Haar's professional corporations were fraudulently incorporated, or whether he was employed by those professional corporations.  (Compl. ¶¶ 95-106.)

---

[4]   Because Plaintiff could not have seen the Complaint Form submitted by Nationwide to the OPMC, Nationwide notes that these statements were not the specific grounds for the OPMC complaint.

Dr. Haar acknowledges that his claims were submitted in 2012, and that Nationwide processed the claims no later than early 2013. (Compl. ¶ 107.) However, again upon information and belief, Dr. Haar alleges – with no explanation for the three-year delay – that Nationwide did not submit the False Complaints to the OPMC until 2016. (*Id.*) Specifically, according to Dr. Haar, in or about August 2016, the OPMC advised him that it had received complaints about the treatment of his Individual Patients and that the complaints were based on "operative reports and corresponding billing." (Compl. ¶¶ 2, 64-66.) Several months later, on January 27, 2017, the OPMC concluded its investigation with no further action or disciplinary findings. (Compl. ¶¶ 3, 69-70.)

## ARGUMENT

### I.   STANDARDS APPLICABLE TO THIS MOTION

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all factual allegations in the Complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

6

678 (citing *Twombly*, 550 U.S. at 556).

Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) & *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)).  The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted).

## II.    PLAINTIFF'S CLAIM RELATING TO THE OPMC COMPLAINT IS NOT LEGALLY COGNIZABLE.

### A.    No Private Right of Action Exists.

Dr. Haar's First Cause of Action seeks to assert a claim against Nationwide for filing complaints with the OPMC without a good-faith basis.  A court in this District previously addressed the issue and held explicitly that no private right of action exists with respect to allegations of bad-faith reporting to the OPMC.  In *Lesesne v. Brimecome*, 918 F. Supp. 2d 221 (S.D.N.Y. 2013), the plaintiff, a plastic surgeon, filed a complaint against his patients who were dissatisfied with their cosmetic surgeries, and thereafter engaged in "a malicious campaign against Dr. Lesesne" where the defendants "repeatedly made false reports to governmental authorities" including the New York Office of Professional Misconduct [sic] pursuant to N.Y. Pub. Health Law § 230(11)(b).  *Id.* at 223.

Because New York's Public Health Law does not provide for an express private right of action, the court in *Lesesne* analyzed whether an implied private right of action exists.  The court reviewed the factors governing whether § 230(11)(b) created an implied private right of action:

> (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted;
>
> (2) whether recognition of a private right of action would promote the legislative purpose; and
>
> (3) whether creation of such a right would be consistent with the legislative scheme."

*Lesesne*, 918 F. Supp. 2d at 229 (internal quotation marks and citations omitted).

The *Lesesne* court found that all three factors militated against finding an implied private right of action exists under § 230.  First, § 230 was enacted to regulate medical misconduct, and thus not directed at benefiting doctors; "it is directed toward protecting individuals who have made complaints to the medical board."  *Id.*

Second, the court in *Lesesne* determined that an implied private right of action would not promote the legislative purpose of § 230 of creating a board to regulate medical misconduct.  *Id.* The purpose of § 230(11)(b) was to "encourage complaints" and to address the reluctance of individuals "to provide information regarding errant doctors because of a fear of litigation."  *Id.* (internal quotation marks and citation omitted).  An implied private right of action would, therefore, be counter to the legislative purpose because it would "chill such complaints."  *Id.*

With respect to the third factor, the *Lesesne* court found that "an implied right of action would be contrary to the legislative scheme."  *Id.*  Specifically, § 230(11)(a) provides that all reports to the medical board remain confidential and shall not be admitted into evidence in any administrative or judicial proceeding.  The court reasoned that such confidentiality and inadmissibility "runs directly contrary to an implied right of action based on such reports."  *Id.*

The court in *Lesesne* was aware that other courts which considered the issue reached divergent results.  For example, the court in *Foong v. Empire Blue Cross & Blue Shield*, 305 A.D.2d 330, 330, 762 N.Y.S.2d 348, 349 (1st Dep't 2003), held that a "plaintiff has an implied right of action under Public Health Law § 230(11)(b), which immunizes from suit insurers and others who make good faith reports to the State Board of Professional Medical Conduct."  The court in *Lesesne*, however, rejected the *Foong* decision, referring to it as a "sparsely analyzed immediate-court precedent" which "does not convince the [federal] Court that a right of action should be implied based on § 230(11) given the extent to which such a right of action would run counter to the purpose of § 230."  *Lesesne*, 918 F. Supp. 2d at 230.

Because no private right of action is available to Plaintiff, this Court should dismiss the First Cause of Action for filing an OPMC complaint allegedly in bad faith.

### B.    The *Noerr-Pennington* Doctrine Precludes Plaintiff's Causes of Action.

The First Amendment guarantees the right to "petition the Government."  U.S. Const. Amend. I.  Under the *Noerr-Pennington* doctrine, "'parties may not be subjected to liability for petitioning the government.'"  *Caesars Entm't Operating Co. v. Appaloosa Inv. Ltd. P'ship I*, 48 Misc. 3d 1212(A), 2015 WL 4430268, at *4 (Sup. Ct. N.Y. Co. 2015) (citation and internal quotation marks omitted).  Thus, "the *Noerr-Pennington* doctrine grants a party immunity for seeking governmental redress or otherwise engaging a governmental agency."  *Icahn v. Raynor*, 32 Misc. 3d 1224(A), 2011 WL 3250417, at *3 (Sup. Ct. N.Y. Co. June, 16 2011), *aff'd sub nom. Nineteen Eighty-Nine, LLC v. Icahn Enters. L.P.*, 99 A.D.3d 546, 953 N.Y.S.2d 4 (1st Dep't 2012).  "The immunity extends to persons who petition all types of government entities . . . ." *Dr. Reddy's Labs., Ltd. v. Aaipharma Inc.*, No. 01 Civ. 10102 (LAP), 2002 WL 31059289, at *13 (S.D.N.Y. Sept. 13, 2002).

The United States Supreme Court has held that private defendants are entitled to immunity under the doctrine regardless of their motivation in petitioning the Government, stating that "[t]he right of the people" to petition the Government "cannot properly be made to depend upon their intent in doing so." *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961); *see also Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 59 (1993) ("the legality of objectively reasonable petitioning 'directed toward obtaining governmental action' is 'not at all affected by any [] purpose [behind the petitioning]'") (citations omitted); *Caesars,* 2015 WL 4430268, at *4 (*Noerr-Pennington* applies "even if the defendant's actions had an anticompetitive or otherwise injurious purpose or effect") (citation and internal quotation marks omitted).

The *Noerr-Pennington* doctrine is fully applicable to Plaintiff's claims.  Although the Second Circuit "has yet to decide whether the *Noerr-Pennington* doctrine . . . must be applied mechanically in cases outside the antitrust area," district courts in this Circuit have applied the doctrine to encompass a variety of state-law tort causes of action.  *LightSquared Inc. v. Deere & Co.*, No. 13 Civ. 8157 (RMB), 2014 WL 345270, at *4 (S.D.N.Y. Jan. 31, 2014) (internal quotation marks and citations omitted); *see also Singh v. NYCTL 2009-A Trust*, 683 F. App'x 76, 77 (2d Cir. Mar. 21, 2017) ("Although the doctrine first arose in the context of petitions for anti-competitive legislation, the *Noerr-Pennington* doctrine encompasses all petitioning activity, including 'concerted actions before courts and administrative agencies . . . .'") (internal quotation marks and citation omitted).  Moreover, New York State courts "have expressly held that the *Noerr-Pennington* doctrine applies to common law tort claims."  *Caesars,* 2015 WL 4430268, at *4-5 (citing *Concourse Nursing Home v. Engelstein*, 278 A.D.2d 35, 35, 717 N.Y.S.2d 154, 154 (1st Dep't 2000); *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d

101, 107, 707 N.Y.S.2d 647, 652 (2d Dep't 2000)).

Plaintiff's Complaint alleges that Nationwide is liable for damages "based on Defendant making false and defamatory statements about Dr. Haar to, and making bad-faith complaints to [sic] about Dr. Haar to, the New York State Office of Professional Medical Conduct." (Compl. ¶ 1; *see also* First Cause of Action.)  These allegations – even if true – fall within the immunity conferred upon a petitioning activity by Nationwide under the *Noerr-Pennington* doctrine.  *See, e.g., Dr. Reddy's Labs.*, 2002 WL 31059289, at *13 ("[t]he *Noerr-Pennington* doctrine provides immunity from liability for conduct seeking to influence government action").  "Courts applying the *Noerr-Pennington* doctrine have concluded that the fact that the effort to influence government is part of a broader scheme does not make the conduct illegal." *Alfred Weissman Real Estate, Inc.*, 268 A.D.2d at 107, 707 N.Y.S.2d at 652 ("[C]ourts have upheld the application of the [*Noerr-Pennington*] doctrine even when the petitioning activity included the use of questionable or underhanded activity.") (citations omitted).

Here, Nationwide was petitioning a governmental agency, *i.e.*, the OPMC of the DOH, to alert it to possible no-fault insurance fraud perpetrated by Plaintiff.  Accordingly, the *Noerr-Pennington* doctrine immunizes Nationwide from liability.

## III.    PLAINTIFF'S SECOND CAUSE OF ACTION FOR DEFAMATION SHOULD BE DISMISSED AS A MATTER OF LAW.

### A.    Nationwide's Complaint to the OPMC Is Protected by an Absolute Privilege.

As the basis for his defamation claim against Nationwide, Dr. Haar alleges "upon information and belief" that Nationwide made False Complaints to the OPMC.  As set forth in detail below, Dr. Haar does not and cannot know what specific statements Nationwide made because such complaints to the OPMC are kept completely confidential.  Nevertheless, taking the allegations as true, this Court should dismiss Dr. Haar's defamation claim because statements

11

made in an OPMC complaint are protected by an absolute privilege.  "The absolute privilege generally is reserved for communications made by individuals participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings . . . to ensure that such persons' own personal interests — especially fear of a civil action, whether successful or otherwise — do not have an adverse impact upon the discharge of their public function." *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365, 834 N.Y.S.2d 494, 497-98 (2007) (internal quotation marks and citation omitted).

Courts in New York apply an absolute privilege in the quasi-judicial, administrative context:

> [T]he complexities of our modern society have substantially broadened the role of administrative law both in its rule-making and adjudicative aspects.  With that expansion has come a concomitant recognition by many courts that certain attributes of the judicial process have equal relevance to those administrative bodies that utilize a quasi-judicial process in the determination of individual rights, privileges or obligations.

*Allan & Allan Arts Ltd. v. Rosenblum*, 201 A.D.2d 136, 139, 615 N.Y.S.2d 410, 412 (2d Dep't 1994) (internal quotation marks and citation omitted).  "Accordingly, during the past several decades, the courts have extended the absolute privilege to a wide array of hearings held by administrative agencies, finding such hearings to be in substance judicial." *Id.* at 139-40, 615 N.Y.S.2d at 412 (citations and internal quotation marks omitted); *cf. Shapira v. Charles Schwab & Co.*, 187 F. Supp. 2d 188, 191 (S.D.N.Y. 2002) (Kaplan, J.) ("But the action taken here [by the NASD] surely did not occur in an adjudicatory context.").

Here, the OPMC, which is a branch of the New York State DOH, comprises an investigatory arm (also called the "Office of Professional Medical Conduct") and an adjudicatory arm, the Board for Professional Medical Conduct (the "BPMC").  The OPMC is the authority within the DOH charged with investigating complaints of physician misconduct, and BPMC

12

imposes sanctions if misconduct is found to have occurred.  *See generally Koch v. Sheehan*, 21 N.Y.3d 697, 704-05, 976 N.Y.S.2d 4, 8 (2013).  Specifically, the OPMC initially conducts investigations and makes the decision whether or not to bring disciplinary proceedings against the physician.  Once charges are brought, OPMC's role as investigator is over.  At that point, the matter is turned over to the BPMC, which prepares charges and prosecutes those charges before an Administrative Law Judge (ALJ) and Hearing Committee of the BPMC.  *Id.*  The ALJ is not entitled to vote.  *See* N.Y. Pub. Health Law § 230(10)(e).  If any of the charges are sustained by the Hearing Committee, it imposes a penalty.  *See id.* § 230(10)(g). The physician may then seek administrative review or commence litigation pursuant to Article 78 of New York's Civil Practice Law and Rules.  *See generally Anghel v. N.Y.S. Dep't of Health*, 947 F. Supp. 2d 284, 291 (E.D.N.Y. 2013), *aff'd*, 589 F. App'x 28 (2d Cir. 2015), *cert. denied*, 135 S. Ct. 2896 (2015); *see also Applewhite v. Briber*, 506 F.3d 181, 182 (2d Cir. 2007) ("absolute judicial immunity attaches to a state medical review board's disciplinary proceeding" pursuant to N.Y. Pub. Health Law § 230(10)).

Moreover, it is not merely statements made in the administrative hearings themselves that are covered by the absolute privilege.  Preliminary and/or investigatory proceedings fall within the protection of the absolute immunity.  In *Cicconi v. McGinn, Smith & Co.*, 27 A.D.3d 59, 808 N.Y.S.2d 604 (1st Dep't 2005), the court considered the applicability of the absolute privilege to statements made on the required termination notice form (Form U-5) filed by a National Association of Securities Dealers (NASD) employer about a terminated employee.  The court in *Cicconi* held that an allegedly defamatory statement on a Form U-5 could properly be said to have been made in a quasi-judicial proceeding, even where no investigation or adversarial hearing followed the filing of the form.  27 A.D.3d at 62-63, 808 N.Y.S.2d at 606-08.  Similarly,

13

in an earlier case, *Herzfeld & Stern, Inc. v. Beck,* 175 A.D.2d 689, 572 N.Y.S.2d 683 (1st Dep't 1991), the court applied the absolute privilege, and pointed out that in the administrative context, "the absolute privilege attaches not only to the hearing stage, but to every step of the proceeding in question even if it is preliminary and/or investigatory and irrespective of whether formal charges are ever presented."  *Id.*, 175 A.D.2d at 691, 572 N.Y.S.2d at 685.

Courts have also extended the application of the absolute privilege to statements in complaint letters.  For example, the court applied the absolute privilege to a complaint letter sent to the grievance committee of a bar association (*see Wiener v. Weintraub*, 22 N.Y.2d 330, 292 N.Y.S.2d 667 (1968)), and in a complaint letter to a division of the State Department of Labor requesting an investigation of an apprentice program.  *See Stilsing Elec., Inc. v. Joyce*, 113 A.D.2d 353, 356, 495 N.Y.S.2d 999, 1002 (3d Dep't 1985); *see also Able Energy, Inc. v. Marcum & Kliegman LLP*, 69 A.D.3d 443, 444, 893 N.Y.S.2d 36, 37 (1st Dep't 2010) (claims "predicated on information contained in a[] . . . letter to the [SEC] were properly dismissed" as absolutely privileged); *Stega v. N.Y. Downtown Hosp.*, 148 A.D.3d 21, 28-29, 44 N.Y.S.3d 417, 422 (1st Dep't 2017) ("statements made to an investigator in the course of the initial investigation by the FDA into the hospital's [Institutional Review Board] are protected by an absolute privilege").  Indeed, these cases clearly establish that the privilege does not only apply to statements made during a hearing before an administrative agency, but also applies to statements made in the very beginning of an administrative agency's investigatory process, even at a preliminary stage with a complaint letter.

Here, Dr. Haar's defamation claim is based on a complaint form, which Nationwide filed with the OPMC pursuant to Regulation 83, codified at 11 N.Y.C.R.R. § 68.8(a), which provides in relevant part that:

[i]nsurers <u>shall report</u> any pattern of overcharging, excessive treatment or any other improper actions by a health provider, within 30 days after such insurer has knowledge of such pattern" to, *inter alia*, the OPMC.

(Emphasis added.)[5]

Furthermore, N.Y. Pub. Health § 230(11)(b), states:

Any person, organization, institution, <u>insurance company</u>, osteopathic or medical society who reports or provides information to the board in good faith, and without malice shall not be subject to an action for civil damages or other relief as the result of such report.

(Emphasis added.)  Accordingly, any statement made to the OPMC by Nationwide should be protected by an absolute privilege protecting Nationwide from any liability for complying with its regulatory obligation to submit a Complaint Form to the OPMC.  Because of the absolute privilege, Plaintiff's state-law claim of defamation must be dismissed as a matter of law.

**B.      Because Complaints to OPMC Are Strictly Confidential, Plaintiff's Allegations of Defamation Are Not Plausible.**

Even if Nationwide's complaint to the OPMC is not covered by an absolute privilege, Dr. Haar's allegations relating to the defamatory statements are not plausible and based on sheer speculation because he has no way of knowing what information Nationwide may have provided to the OPMC.  As explained above, Public Health Law § 230 creates the OPMC, which is authorized to investigate instances of apparent misconduct committed by physicians.  The statute further states that reports of information submitted to the OPMC "shall remain confidential and shall not be admitted into evidence in any administrative or judicial proceeding."  N.Y. Pub. Health Law § 230(11)(a).  The statute was enacted to "encourage disclosure of medical malpractice and physician misconduct and to alleviate complainants' fear of litigation resulting from doing so."  *Axelrod v. Sobol*, 78 N.Y.2d 112, 115, 571 N.Y.S.2d 902, 903 (1991).

---

[5]      Indeed, Regulation 83 goes so far as to provide the specific OPMC address to which such reports are to be submitted.  *See* 11 N.Y.C.R.R. § 68.8(a)(1)(i).

Courts have consistently blocked plaintiffs from obtaining any reports, information, and complaints submitted to or from the OPMC.  In *Anonymous v. Bureau of Prof'l Med. Conduct/State Bd. for Prof'l Conduct*, 2 N.Y.3d 663, 781 N.Y.S.2d 270 (2004), the New York State Court of Appeals reiterated that Public Health Law § 230(9) required that pending disciplinary proceedings against medical professionals not be open to the public, and further held that such confidentiality extends to terminated proceedings that have even been resolved in the physician's favor.  2 N.Y.3d at 669, 781 N.Y.S.2d at 274.  Similarly, in *Alcena v. Empire Blue Cross & Blue Shield*, 13 A.D.3d 472, 473, 787 N.Y.S.2d 91, 92 (2d Dep't 2004), the court held that a defendant could not be compelled to answer questions asked of him at his deposition regarding whether he filed a complaint with the OPMC on behalf of the health insurer against the plaintiff.  The plaintiff in *Alcena* was not even entitled to have the OPMC complaint inspected *in camera*.  *Id.*, 13 A.D.3d at 473, 787 N.Y.S.2d at 92.

Likewise, in *Chalasani v. Daines*, No. 10 CV 1978 (RRM)(RML), 2011 WL 4465564, at *2 (E.D.N.Y. June 30, 2011), the director of the OPMC and the DOH both refused the plaintiff's Freedom of Information Law ("FOIL") request because the OPMC's investigatory files were kept confidential pursuant to N.Y. Pub. Health Law § 230(10)(a)(v).  The court rejected the plaintiff's claim that he had a due process right to the OPMC's investigatory files.  The court held that the plaintiff had no property interest in such documents, and thus "the defendants' failure to provide the requested documents does not amount to a constitutional violation."  *Id.* at *10 (internal quotation marks and citations omitted); *see also Michaelis v. Graziano*, 5 N.Y.3d 317, 323, 801 N.Y.S.2d 790, 793 (2005) (materials contained in the *in camera* affidavit were properly withheld from petitioner, "because it involved confidential aspects of the OPMC's investigation").

Because of the strict confidentiality of the complaints made to the OPMC as well as its investigatory files, it is not plausible for Plaintiff to allege, even "upon information and belief" what specific statements were made by Nationwide to the OPMC. (Compl. ¶¶ 49-56 and *see* Summary of Complaint Allegations *supra*.) In short, Plaintiff is making a "wild guess" as to what statements are contained in the OPMC complaint form.[6] Consequently, Plaintiff has failed to plead an accompanying statement of the facts upon which the belief is founded with respect to the defamatory statements made to the OPMC. *See Munoz-Nagel*, 2013 WL 1809772, at *3 (citation omitted).

Moreover, a defamatory statement is one that exposes the plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society." *Karedes v. Ackerley Grp., Inc.,* 423 F.3d 107, 113 (2d Cir. 2005) (internal quotation marks and citation omitted). Because the OPMC complaint and investigation are completely confidential, none of the alleged defamatory statements made to the OPMC could expose Plaintiff to such "public hatred, shame, obloquy," etc.

### C.   The Alleged Statements to the OPMC Do Not Satisfy the Elements for Defamation.

Even if the allegations in the Complaint based "upon information and belief" were plausible, they still would fail to state a claim for defamation. "Under New York law, a plaintiff

---

[6]      As this Court noted, "even under the liberal standard of Rule 8, to establish a claim for defamation, the complaint must identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published." *Yukos Capital S.A.R.L. v. Feldman*, No. 15-cv-4964 (LAK), 2016 WL 183360, at *1 (S.D.N.Y. Jan. 11, 2016) (internal quotation marks and citation omitted).

must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). The defamatory statements alleged by Dr. Haar in his Complaint (1) are not statements of fact, but non-actionable expressions of opinion; and (2) were not published due to the confidential nature of the OPMC investigation.

      1.    <u>The Allegations Are Expressions of Opinions and Not Statements of Fact.</u>

Here, all of the alleged defamatory statements are not actionable because they are expressions of opinion, not statements of fact. Under New York law, statements of pure opinion are not actionable as defamation. *See Gross v. New York Times Co.,* 82 N.Y.2d 146, 603 N.Y.S.2d 813 (1993); *see also Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) ("expressions of opinion are not actionable"); *Mann v. Abel*, 10 N.Y.3d 271, 276, 856 N.Y.S.2d 31, 32-33 (2008) ("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and no matter how offensive, cannot be the subject of an action for defamation.") (citations omitted). A statement of opinion is not an assertion of fact that can be proved false, and "[a]n assertion that cannot be proved false cannot be held libellous." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977); *see also Brian v. Richardson,* 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 350 (1995) ("Since falsity is a *sine qua non* of a libel claim and since only assertions of fact are capable of being proven false, we have consistently held that a libel action cannot be maintained unless it is premised on published assertions of *fact.*").

Whether a statement is one of fact or opinion is a question of law for the court. *Mann*, 10 N.Y.3d at 276, 856 N.Y.S.2d at 32. New York courts look principally to three factors to make this determination: (1) whether the language lacks readily understood meaning; (2) whether the

18

statement is incapable of being proven false; and (3) text or social context signals to the audience

that the statement is one of opinion rather than of fact.  *See Protic v. Dengler*, 46 F. Supp. 2d

277, 281 (S.D.N.Y. 1999) (Kaplan, J.) (citing *Gross,* 82 N.Y.2d at 153, 603 N.Y.S.2d at 817),

*aff'd,* 205 F.3d 1324 (2d Cir. 1999).  "When the defendant's statements, read in context, are

readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is

said is opinion, and not fact."  *Levin,* 119 F.3d at 197 (citation omitted).

Plaintiff alleges that five statements are defamatory:

*Statement 1*    The amount of time that Dr. Haar expended in performing surgical
procedures on each of the Individual Patients was <u>insufficient</u> given the nature and complexity of
the surgeries performed.  (Compl. ¶ 50; emphasis added.)

*Statement 2*    Patients 1, 2, and 3 received <u>unnecessary</u> post-operative anesthetic
treatment that was <u>improper</u>, and that Dr. Haar was responsible for their receiving this
allegedly <u>improper</u> treatment.  (Compl. ¶ 51; emphasis added.)

*Statement 3*    the surgical procedure performed on Patient 2 was performed <u>prematurely</u>.
(Compl. ¶ 52; emphasis added.)

*Statement 4*    certain <u>professional corporations</u> owned by him were "<u>fraudulently
incorporated</u>" within the meaning of Regulation 68 and *Mallela*.  (Compl. ¶ 53; emphasis
added.)

*Statement 5*    Dr. Haar's employment status with certain <u>professional corporations</u> owned
by him rendered the professional corporations <u>ineligible</u> to receive payment of no-fault claims
pursuant to Regulation 68 and *Mallela*.  (Compl. ¶ 54; emphasis added.)

Plaintiff claims that the foregoing "False Complaints" constitute defamation *per se*.

(Compl. ¶ 126.)  This Court has held that a writing is libelous *per se* where "defamatory meaning

is apparent on the face of the communication and is actionable without proof of special

damages."  *Protic*, 46 F. Supp. 2d at 280 (internal quotation marks and footnote omitted).  Here,

nothing on the face of these alleged statements is defamatory.  These purported statements

articulate opinions about medical procedures and/or legal conclusions pertaining to the status of

his professional corporations.

Nationwide is not a physician and therefore incapable of making any factual statements regarding the propriety or timing of the surgical procedures and/or post-operative anesthetic treatment.  *See Jacobs v. Oppenheim*, No. 12-CV-7259 (VB), 2015 WL 5460104, at *5 (S.D.N.Y. June 17, 2015) ("Any reader would understand defendant's report to be his medical opinion – not medical gospel.").  In the context of the OPMC Complaint Form, the OPMC was surely aware that Nationwide would be making lay opinions under its legal obligations to request further review and investigation by the state medical board.  *See Protic*, 46 F. Supp. 2d at 281 ("First, the recipient of comments such as those complained of here necessarily knows that the comments reflect the speaker's opinion."); *Brian*, 87 N.Y.2d at 53, 637 N.Y.S.2d at 352 ("[W]e conclude on this record that a reasonable reader would understand the statements defendant made about plaintiff as mere *allegations* to be investigated rather than as *facts*.") (emphasis in original).

Similarly, statements alleged to have been made by Nationwide to OPMC to fraudulent incorporations of Plaintiff's companies and their ineligibility to receive no-fault payments under insurance regulations and case law are directed more towards the companies rather than Plaintiff as an individual.  Moreover, those statements are at best legal opinions, which cannot form the basis of a defamation claim.  In *Titan Cap. Grp. II, LLC, v. Raghavan*, 19 Misc. 3d 1115(A), 2008 WL 921026 (Sup. Ct. N.Y. Co. 2008), the alleged defamatory statements included, "Mr. Raghavan has now violated his contract with Titan by accepting employment with Marathon" and "Mr. Raghavan's breach of his agreement with Titan is compounded by his refusal to return the advance paid to him by Titan."  *Id.* at *6. Raghavan asserted that these statements were false and that they constituted libel *per se* in that they impute fraud, dishonesty, and misconduct by Raghavan in his professional conduct.  The court disagreed

and held that those statements were non-actionable statements of <u>legal opinion</u> that "would commonly be viewed as Titan's opinion as to the legal implications of Raghavan's termination of his employment." *Id.*, at *7. *See also Gotbetter v. Dow Jones & Co.*, 259 A.D.2d 335, 335, 687 N.Y.S.2d 43, 44 (1st Dep't 1999) (statement that lawsuit was "baseless" is non-actionable opinion); *Lenz v. Young*, 492 F. App'x 145, 147 (2d Cir. 2012) (attorney's opinion about how a lawsuit would proceed not defamatory).

Here, in the context of the OPMC Complaint Form, the alleged statements with regard to fraudulent incorporations of Plaintiff's companies and/or their ineligibility to receive no-fault payments under insurance laws are expressions of legal opinion, allegations, or at best legal conclusions, which do not even constitute factual statements. *See Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly*, 550 U.S. at 555); *Lenz*, 492 F. App'x at 147 (New York courts "will not strain to find a defamatory interpretation where none exists.") (internal quotation marks and citation omitted).

2.     <u>No Defamatory Statements Were Published.</u>

Plaintiff's defamation claim should be dismissed for failure to state a claim for the additional reason that no defamatory statement was ever published.  As explained above, the only statement allegedly was made by Nationwide to the OPMC as part of a confidential investigation.  Aside from the OPMC, which is prohibited from disclosing any complaints submitted to it, Plaintiff does not allege that anyone ever received the alleged defamatory statements, including Plaintiff himself.  *See Sieger v. Union of Orthodox Rabbis of U.S. and Canada, Inc.*, 1 A.D.3d 180, 183, 767 N.Y.S.2d 78, 80 (2003) ("Plaintiff's defamation claim is deficient on the additional ground that the publication element has not been met, since there is no

21

evidence that defendants disclosed the existence or the substance of the heter [permission from rabbinical tribunal for the husband to remarry] to third parties unrelated to the heter process itself.").

### D.    Plaintiff's Defamation Claim is Time Barred.

Under New York law, the statute of limitations for a defamation claim is one year.  N.Y. C.P.L.R. § 215(3).  "A cause of action for defamation accrues, and the statute of limitation begins to run, from the date that the alleged defamatory statement is first published, not from when a claimant first acquires knowledge of the statement."  *Jacobs*, 2015 WL 5460104, at *3 (internal quotation marks and citations omitted).

Dr. Haar acknowledges that his claims for reimbursement by the insurer were submitted in 2012, and that Nationwide processed those claims no later than early 2013.  (Compl. ¶ 107.) However, again "upon information and belief," Dr. Haar alleges that "Nationwide did not submit the False Complaints to the OPMC until in or about 2016."  (*Id.*)  As reflected in the accompanying Declaration of Ronald Balzan, Special Investigator for Nationwide dated August 24, 2017 ("Balzan Decl."), the OPMC's official Complaint Form which he submitted is dated October 2, 2012.  A true and accurate copy of the form, redacted to maintain the confidentiality of its substance, is attached as Exhibit A to the Balzan Declaration.[7]  This complaint form is the only complaint submitted to or communication with the OPMC.  (Balzan Decl. ¶ 3.)  Because the alleged defamatory statements included in the OPMC's Complaint Form occurred on or about October 2, 2012, Plaintiff's defamation claim is time-barred.

With respect to the OPMC's Complaint Form attached to the Balzan Declaration, this Court may consider documents attached to a complaint or incorporated by reference therein.

---

[7]    As noted above, upon the request of the Court, Nationwide will provide a copy of the unredacted October 2, 2012 OPMC Complaint Form for the Court's *in camera* inspection.

*See, e.g.*, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (documents outside of pleadings can be considered on a motion to dismiss if "plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit.  It did not lack notice of those documents; these papers were integral to its complaint.").  In defamation actions, this typically includes the documents containing the allegedly defamatory statements.  *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 414 n.52 (S.D.N.Y. 2009) (citing *Gargiulo v. Forster & Garbus Esqs.,* 651 F. Supp. 2d 188, 190 (S.D.N.Y. 2009) and *Riel v. Morgan Stanley*, No. 06 CV 524 (TPG), 2007 WL 541955, at *4, *8 (S.D.N.Y. Feb. 16, 2007), *aff'd,* 299 F. App'x 91 (2d Cir. 2008)).

Here, the OPMC Complaint Form contains the alleged defamatory statements, and thus that document is incorporated by reference into the Complaint and is integral to Plaintiff's defamation claim.  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); s*ee also Ellison v. Evans*, No. 13 Civ. 885 (KBF), 2013 WL 5863545, at *1 n.5 (S.D.N.Y. Oct. 31, 2013) (considering grievances submitted by defendant in motion to dismiss "[b]ecause these documents [we]re either explicitly referred to or incorporated by reference in plaintiffs' complaint"), *aff'd sub nom. Fuller v. Evans*, 586 F. App'x 825 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2807 (2015); *Sanchez v. Velez*, No. 08 Civ. 1519 (NRB), 2009 WL 2252319, at *1 n.1 (S.D.N.Y. July 24, 2009) ("Because plaintiff's grievances are referenced

in the complaint, the grievance documents are incorporated by reference and properly considered on a motion to dismiss.") (citations omitted).

For purposes of the statute of limitations, the OPMC Complaint Form clearly indicates that the alleged statement was made on or around October 2, 2012.  The fact that the OPMC may have delayed until 2016 to investigate means that Plaintiff sustained no injury in the interim, and sustained no injury after 2016 because Plaintiff acknowledges that the OPMC concluded its investigation with no further action or disciplinary findings.  (Compl. ¶¶ 69-70.)

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Nationwide respectfully requests that the Court (1) dismiss the Complaint with prejudice and without leave for Plaintiff to amend the Complaint; (2) grant Nationwide an award of its attorneys' fees and costs; and (3) grant such further relief as the Court may deem just and proper.

Dated: New York, New York
      August 25, 2017

                             Respectfully submitted,

                             **DUANE MORRIS LLP**

                             By: <u>/s/  Andrew T. Hahn, Sr.</u>
                                 Andrew T. Hahn, Sr.
                                 Ralph Carter
                           1540 Broadway
                           New York, New York 10036
                           Tel.: (212) 692-1000
                           Email: athahn@duanemorris.com
                                   rcarter@duanemorris.com

                           *Attorneys for Defendant*
                           *Nationwide Mutual Fire Insurance Company*