Gregory Zimmer, Esq.
360 Lexington Avenue, Suite 1502
New York, New York 10017
Tel:  (914) 402-5683
Fax:  (914) 402-5683
E-mail:  GZimmer@GZimmerLegal.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

| | |
|---|---|
| DR. ROBERT D. HAAR, M.D., | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : No. 1:17-cv-05425 (LAK) |
| NATIONWIDE MUTUAL FIRE INSURANCE | : |
| CO., JOHN AND JANE DOE CORPS 1-10, and | : |
| JOHN AND JANE DOES 1-10, | : |
| | : |
| Defendants. | : |

-------------------------------------------------------------- x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY'S MOTION
<u>TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL HISTORY ........................................................... 4

ARGUMENT .............................................................................................................. 8

I        LEGAL STANDARD ...................................................................................... 5

II       THE COMPLAINT STATES A CLAIM
FOR BAD FAITH REPORTING TO OPMC ................................................... 7

A.      New York Public Health Law § 230(11)(b) Creates A
Private Right Of Action For Bad Faith Reporting To OPMC ........................... 9

B.      Each of The Factors Relevant To Whether An Implied
Right Of Action Exists Under Section 230 Strongly
Support The Existence Of Such A Cause Of Action ........................................ 11

1.       Physicians Are One Of The Classes Of
Persons Section 230 Was Intended To Benefit ................................................ 12

2.       The Private Right Of Action For Bad Faith Reporting
To OPMC Promotes The Purpose Of Section 230 .......................................... 14

3.       The Private Right Of Action For Bad Faith Reporting To OPMC
Is Consistent With The Purpose Of The Legislative Scheme ........................... 16

C.      The Complaint Properly Alleges Bad Faith Reporting To OPMC ................... 19

D.      The Noerr-Pennington Doctrine Does Not
Preclude Dr. Haar's Bad Faith Reporting Claim ............................................ 22

1.       The Noerr-Pennington Doctrine Does Not Apply
Where, As Here, The Statute Authorizing Submissions To
The Government Expressly Authorizes Only Good Faith Reporting ............... 23

2.       Even If The Noerr-Pennington Doctrine Did Apply
To Claims Under Section 230 Dr. Haar's Claim Would
Be Permitted Under The Sham Exception To The Doctrine ............................. 30

III.     DR. HAAR'S DEFAMATION CLAIM SHOULD NOT BE DISMISSED ................... 32

CONCLUSION..................................................................................................................... 33

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*,
   268 A.D.2d 101, 707 N.Y.S.2d 647 (2d Dep't 1999)........................................ 28, 29

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) ......................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................ 8, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................ 8, 19

*Caesars Entertainment Operating Co., Inc. v. Appaloosa Inv. L.P. I*,
   2015 N.Y. Misc. Lexis 2542, 48 Misc. 3d 1212(A) (Sup. Ct. N.Y. Co. July 20, 2015) .... 25, 26

*Cohen v. Citibank, N.A.*,
   1997 U.S. Dist. LEXIS 2112, No. 95 Civ. 4826 (S.D.N.Y. Feb. 28, 1997) .............................. 7

*Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.*,
   01 Civ. 10102 (LAP), 2002 U.S. Dist. LEXIS 17287 (S.D.N.Y. Sept. 19, 2002)................... 27

*Eastern R. Presidents Conf. v. Noerr Motor Freeight, Inc.*,
   365 U.S. 127 (1961)...................................................................... 23, 24

*Evans v. Syracuse City School District*,
   704 F.2d 44 (2d Cir. 1983) ............................................................... 7

*Foman v. Davis*,
   371 U.S. 178, 83 S. Ct. 227 (1962)...................................................... 7

*Foong v. Empire Blue Cross & Blue Shield*,
   305 A.D.2d 330, 762 N.Y.S.2d 348 (1st Dept. 2003)........................................ 9, 10

*Ichan v. Raynor*,
   32 Misc. 3d 1224(A), 2011 Misc. LEXIS 3724 (Sup. Ct. N.Y. Co. June 16, 2011) ............... 26

*Intermetals Corp. v. M V Arctic Confidence*,
   1993 U.S. Dist. LEXIS 11239, No. 92 Civ. 1856 (S.D.N.Y. Aug. 12, 1993) ......................... 7

*Lesesne v. Brimecome*,
   918 F. Supp. 221 (S.D.N.Y. 2013) .............................................. *passim*

*LightSquared Inc. v. Deere & Co.*,
   13 Civ. 8157 (RMB), 2014 U.S. Dist. LEXIS 14752 (S.D.N.Y. Jan. 31, 2014) ..................... 28

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (S.D.N.Y. 1993)........................................................ 22

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*,
   701 F. Supp. 2d 568 (S.D.N.Y. 2010) ................................................. 28

*Munoz-Nagel v. Guess, Inc.*,
   No. 12-CV-1312(ER), 2013 WL 1809772 (S.D.N.Y. Apr. 30, 2013)................................. 8, 21

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) .................................................................................................... 27, 31

*Singh v. NYCTL 2009-A Trust*,
   683 F. App'x 76 (2d Cir. Mar. 21, 2017).................................................................... 28

*State Farm v. Mallela*,
   4 N.Y.3d 313 (2005) .................................................................................................... 20

*State Teachers Retirement Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981) ....................................................................................... 7

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965)..................................................................................................... 23

*Weisenthal v. United Health Care Ins. Co.*,
   07 Civ. 1175 (LAP), 07 Civ. 0945 (LAP), 2007 U.S. Dist. LEXIS 91447
   (S.D.N.Y. Nov. 29, 2007) ............................................................................................ 11

## <u>Statutes</u>

Fed. R.Civ. P. 8 .......................................................................................................................... 8

Fed. R.Civ. P. 12 ........................................................................................................................ 1

Fed. R.Civ. P. 15 ........................................................................................................................ 6

N.Y. Pub. Health Law § 230 ............................................................................................. *passim*

N.Y. Pub. Health Law § 4405-b ............................................................................................... 11

N.Y. Pub. Health Law § 4406-d ............................................................................................... 10

11 NYCRR § 65-3.16 .................................................................................................................. 9

Plaintiff Dr. Robert D. Haar, M.D. ("Dr. Haar") respectfully submits this Memorandum of Law, along with the Declaration of Dr. Robert D. Haar, M.D., sworn to September 26, 2014 (the "Haar Decl."), in opposition to the motion to dismiss Dr. Haar's Complaint (the "Motion") filed by defendant Nationwide Mutual Fire Insurance Co., Inc. ("Nationwide").

## PRELIMINARY STAYEMENT

Nationwide's Motion is remarkable.  Not for its persuasiveness, but for its sheer audacity.

The introductory paragraph of Nationwide's Motion gratuitously describes a five-year-old charge brought by the U.S. Attorney for the Southern District of New York against ten unnamed doctors for "participating in a $279 million no-fault automobile insurance fraud scheme."  (*See* Memorandum of Law in Support of Defendant Nationwide Mutual Fire Insurance Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Moving Memo") at 1.) The charges do not have any relation to Dr. Haar, or any relevance to this action, and Nationwide does not purport to identify any such relevance.  Nationwide does not even mention whether any of the doctors were convicted on any of the charges brought in 2012.  Instead, this prejudicial and inapplicable picture of New York physicians is painted by Nationwide as a prelude to its celebration that, in its view, "New York State law . . . provides certain *weapons* for insurers," in the form of mandatory reporting of "overcharging, excessive treatment or any other improper actions by a health provider to the New York State Department of Financial Services and the Department of health."  (*Id.* (emphasis added).)  The remainder of Nationwide's Moving Memo makes clear that it believes that one of the "weapons" that New York State and the U.S. Constitution provides to it is the ability to make false statements and reports in bad faith against innocent physicians, with impunity.

Nationwide's position is that it has a statutory, constitutional, and apparently God-given right to make false and defamatory statements and reports against doctors who have the audacity to seek reimbursement for legitimate medical services provided to Nationwide's insureds.

Nationwide argues that a statute that expressly protects only *good faith* reports to the New York Office of Professional Medical Conduct ("OPMC") gives absolute impunity for *bad faith*, false reports, and is in fact *intended to encourage* such bad faith reports. Nationwide argues that the Constitution gives absolute impunity for making bad-faith, false reports to government agencies (under Nationwide's theory, making a false police report or calling in a false report of a fire, *in bad faith*, would also be absolutely privileged under the *Noerr-Pennington* doctrine).

Nationwide argues that false statements made to medical boards wielding the power to revoke a physician's license and deprive him of the ability to earn a living are not published statements within the meaning of the defamation laws.[1] Nationwide argues that despite its unique access to detailed information about specific medical providers and the treatments for which they seek no-fault reimbursement from Nationwide, its ability to obtain virtually any information it wishes from providers seeking reimbursement, and its cadre of on-the-payroll medical experts, statements by Nationwide that physicians performed operations in insufficiently short times, performed unnecessary procedures, and performed surgeries prematurely are not statements of fact. And Nationwide argues that despite its expertise in insurance billing and its unique ability to obtain information about the eligibility of specific medical providers to receive no-fault reimbursement, statements by Nationwide that physicians engaged in insurance fraud are not statements of fact. Nationwide also argues that it's statements that Dr. Haar provided

---

[1]      Ironically, even if Nationwide were correct, it admits that it made the same false statements and reports about Dr. Haar to others, including the National Insurance Crime Board ("NICB").

improper, unnecessary and premature medical treatment, and that he had committed insurance fraud, are not defamatory *per se*, or in fact at all.

Nationwide also argues that Dr. Haar's Complaint, which was filed in *State Court* before this action was removed on diversity grounds to this Court, should be dismissed based on *federal* pleading standards, which, in any event, the Complaint fully satisfies.

Nationwide's most audacious gambit, however, is its self-serving filing of and reliance upon a self-servingly redacted copy of a false report concerning alleged misconduct by Dr. Haar submitted to OPMC by Nationwide (the "OPMC Report") in support of its Motion, and offering to show the unredacted version to the Court, while at the same time (incorrectly) arguing that Dr. Haar cannot prove his case because he may not see redacted portion of the document. Nationwide's willing revelation of those portions of the OPMC Report that it deems helpful to its case at this point in the litigation estops it from arguing that the report is not discoverable or admissible in this action.

For the reasons set forth below, each of Nationwide's arguments is not only disingenuous, but incorrect and insufficient to warrant dismissal of the Complaint.  Accordingly, the Court should deny Nationwide's Motion in its entirety.

## FACTUAL AND PROCEDURAL HISTORY[2]

Dr. Haar filed his Complaint in the Supreme Court on June 6, 2017.[3]

---

[2]        The Court is respectfully referred to the Verified Complaint filed on June 6, 2017 (the "Complaint") in the New York State Supreme Court, New York County (the "Supreme Court") (a copy of which is annexed to the Declaration of Andrew T. Hahn, Sr., filed with the Motion, as Exhibit A), and the Haar Decl., for a complete recitation of the facts supporting Dr. Haar's claims.  Facts relevant to specific arguments contained in the Argument section of this Memorandum of Law are set forth therein.

[3]        The Complaint was filed in the Supreme Court and was verified by Dr. Haar based on his own personal knowledge and, where allegations were based on his information and belief, he verified that he believed them to be true.  (*See* Complaint Verification, Hahn Decl. Ex. A)  While, as demonstrated below, the Complaint satisfies the pleading requirements applicable in Federal Court, if the Court should find that supplemental allegations, including, but not limited to allegations setting forth the basis for Dr. Haar's information and belief with respect to certain of his existing allegations, are necessary now that this action has been removed to Federal Court, Dr. Haar respectfully

The Complaint alleges that Nationwide made false and defamatory statements and allegations without any basis, and in bad faith, in the OPMC Report concerning Dr. Haar's treatment of four patients whose medical expenses were covered by automobile insurance policies issued by Nationwide. (*See* Complaint ¶¶ 49-52.) The Complaint also alleges that Nationwide made false and defamatory statements and allegations in the OPMC Report that Dr. Haar had engaged in fraudulent billing in that Nationwide falsely stated and reported that Dr. Haar's professional corporation was fraudulently incorporated and ineligible to receive no-fault reimbursement for claims filed with Nationwide. (*See id.* ¶¶ 53-54.) These allegations are based on a notice provided to Dr. Haar by OPMC (the "OPMC Notice") detailing the allegations made against him by Nationwide, and on Dr. Haar's participation in an investigation and hearing conducted by OPMC with respect to Nationwide's allegations, which was closed without any further action and without imposing any disciplinary findings. (*See id.* ¶¶ 2, 64; Haar Decl. ¶ 2.)

Dr. Haar was aware of the statements made to OPMC about him in the OPMC Report because they were set forth in the OPMC Notice and because he participated in the OPMC investigation and hearing with respect to Nationwide's false allegations. (*See* Haar Decl. ¶ 2.)

---

requests permission to amend his pleading and stands ready to do so. (*See* Haar Decl.) Rule 15(a) of the Federal Rules of Civil Procedure states, "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cohen v. Citibank, N.A.*, 1997 U.S. Dist. LEXIS 2112, No. 95 Civ. 4826, at *2 (S.D.N.Y. Feb. 28, 1997); *Intermetals Corp. v. M V Arctic Confidence*, 1993 U.S. Dist. LEXIS 11239, No. 92 Civ. 1856, at *1 (S.D.N.Y. Aug. 12, 1993). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave" should be given. *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). "Although the grant or denial of leave to amend is within the discretion of the district court, a decision 'without any justifying reason' may be an 'abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d Cir. 1983) (quoting *Foman*, 371 U.S. at 182). *See also Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

However, because the OPMC Notice did not inform Dr. Haar who submitted the OPMC Report, he alleged on "information and belief" that Nationwide submitted the report, and alleged (not on information and belief) the factual basis for his belief that Nationwide had made the false report. (*See id.* ¶¶ 63-66; Haar Decl. ¶ 2.)  Nationwide now admits that it submitted the OPMC Report to OPMC.  (*See* Declaration of Ronald Balzan submitted in support of Nationwide's Motion (hereinafter, the "Balzan Decl.") ¶ 2, Ex. A.)  Nationwide also admits that it made the same statements to the New York State Insurance Frauds Bureau, and the National Insurance Crime Board ("NICB"), which is not a government entity but, rather, is a private organization created by the insurance industry and who's membership is consists almost exclusively of insurance companies.  (*See* Bazlan Dec. Ex. A; https://www.nicb.org/about-nicb/nicb_members.)  Thus, Dr. Haar's allegation on information and belief that it was Nationwide that had made the false statements and reports to OPMC not only had good faith basis (that was alleged in the Complaint), *it is true*.

Nationwide removed this action from the State Court to this Court on July 18, 2017.

## ARGUMENT

## I.   LEGAL STANDARD

A complaint in federal district court must forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.Civ. P. 8.  To satisfy this standard, a plaintiff need only allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Allegations made upon information and belief must be accepted as true where they are "accompanied by a statement of the facts upon which the belief is founded."  *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312(ER), 2013 WL 1809772, at *3

(S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (internal quotations omitted).

## II.     THE COMPLAINT STATES A CLAIM
FOR BAD FAITH REPORTING TO OPMC

### A.     New York Public Health Law § 230(11)(b) Creates A
Private Right Of Action For Bad Faith Reporting To OPMC

Section 230 of the New York Public Health Law ("Section 230") establishes a statutory scheme for the regulation of physicians' conduct and the good faith reporting, investigation and discipline of physicians that engage in professional misconduct.  N.Y. Pub. Health Law § 230. Section 230(11)(b) provides that "[a]ny person, organization, institution, insurance company, osteopathic or medical society who reports or provides information to the board *in good faith*, and without malice shall not be subject to an action for civil damages or other relief as the result of such report."  N.Y. Pub. Health Law § 230(11)(b) (emphasis added).  The statute itself makes clear that only persons and entities making reports to OPMC *in good faith* are protected from civil liability, with the obvious corollary being that persons or entities who make bad faith reports to OPMC *are* (and should be) subject to civil liability.  If there ever was a statute that implied a private right of action, and set forth clearly the elements of such a cause of action, it is Section 230.

The well-respected New York appellate court, the New York State Supreme Court Appellate Division, First Department (the "First Department"), has expressly ruled that Section 230 implies a private right of action.  *See Foong v. Empire Blue Cross & Blue Shield*, 305 A.D.2d 330, 330, 762 N.Y.S.2d 348, 349 (1st Dept. 2003).

The *Foong* court considered whether implied rights of action exist under two different statutes, "Public Health Law § 4406-d, which gives health care providers a measure of due process, in the form of peer review, against the arbitrary termination of health care plan

contracts, but does not provide for any means of enforcement," and "Public Health Law § 230(11)(b), which immunizes from suit insurers and others who make good faith reports to the State Board for Professional Medical Conduct." *Id.* The *Foong* court specifically considered the fact that neither statute expressly provides a private right of action, and rejected the defendant insurer's argument that such a cause of action would be inconsistent with the purpose of the statutes or contrary to their purposes. *Id.* ("We reject defendant's argument that such a right of action [under § 4406-d] will thwart its statutory right to terminate a provider immediately, without a hearing, in cases of imminent harm to patient care and fraud. . . . For similar reasons, plaintiff has an implied right of action under Public Health Law § 230(11)(b)"). The *Foong* court found that both statues implied private rights of action.

It is true that a case decided in this Court, *Lesesne v. Brimecome*, 918 F. Supp. 221 (S.D.N.Y. 2013), ruled in contradiction to the interpretation of this New York state statute by a significant New York appellate court, the First Department. In doing so, however, the *Lesesne* court engaged in a misguided analysis of the factors to be considered in deciding whether a private right of action should be implied in a New York State statute. As set forth in Section II(B), *infra*, the *Lesesne* analysis was flawed in several respects.

The *Lesesne* court rejected the *Foong* decision as "sparsely analyzed" and stated that the *Foong* decision did not convince it that a private right of action should be implied in light of the *Lesesne* court's view that "such a cause of action would run counter to the purpose of § 230." *Id.* at 230. However, as set forth above, the *Foong* court indicated that it had considered whether implied rights of action under both of the statutes before it would be contrary to the purpose of those statutes, and found that they would not. For the *Lesesne* court to assume that the *Foong* court, a well-respected appellate court in New York State, would reach such a significant

conclusion with respect to two separate statutes based on a "sparse analysis" simply because that analysis was not set forth in detail in the decision is cynical at best.  As shown in Section II(B), *infra*, each of the factors analyzed in *Lesesne*, including the purpose of Section 230, actually weigh in favor of the implication of a private right of action.

The *Lesesne* court also recognized that another decision of this Court, in *Weisenthal v. United Health Care Ins. Co.*, 07 Civ. 1175 (LAP), 07 Civ. 0945 (LAP), 2007 U.S. Dist. LEXIS 91447 (S.D.N.Y. Nov. 29, 2007) held that the plaintiff could pursue a claim for bad faith reporting to the New York State licensing board under New York Public Health Law §4405-b, which contains language substantially similar to Section 230(11)(b).  *See id.* at *6; N.Y. Pub. Health Law § 4405-b ("Any person, facility, organization or corporation which makes a report pursuant to this section in good faith without malice shall have immunity from any liability, civil or criminal, for having made such report.").  Notably, in recognizing that the plaintiff could pursue a claim for bad faith reporting based on this language, the court in *Weisenthal* relied on the *Foong* decision that was rejected by the *Lesesne* court.  *Weisenthal*, 2007 U.S. Dist. LEXIS 91447 at * 23.  As noted above, *Foong* recognized a cause of action for bad faith reporting under Section 230(11)(b).

> **B.  Each of The Factors Relevant To Whether An Implied Right Of Action Exists Under Section 230 Strongly Support The Existence Of Such A Cause Of Action**

As the court recognized in *Lesesne*, the factors courts in this District consider when deciding whether an implied right of action exists under a statute are:  (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether the creation of such a right would be consistent with the legislative scheme."  *Id.* at 229.  As set forth below, each of these factors strongly militates in favor of a private right of action under Section 230,

especially when considered in light of the fact that Section 230 expressly protects only persons

and entities who make reports to OPMC and participate in OPMC proceedings *in good faith* and

without malice, a fact that Nationwide and the *Lesesne* court both ignored in their analysis of the

purpose of Section 230.

> 1.  Physicians Are One Of The Classes Of
>     Persons Section 230 Was Intended To Benefit

Section 230 expressly states that only persons and entities who make reports to OPMC *in*

*good faith* are shielded from civil liability for reports made to OPMC.  N.Y. Pub. Health Law

§230(11)(b).  Section 230 therefore makes explicitly clear that persons or entities who make

reports to OPMC in bad faith should face civil liability.  *Id.*  The suggestion in *Lesesne* and in

Nationwide's Moving Brief that Section 230 was intended only to protect persons or entities

making reports to OPMC is incomprehensible.  The legislature could have given absolute

immunity for all reports to OPMC (which is what Nationwide argues for here), but it did not.

The legislature could have expressly shielded bad faith reports to OPMC, but it did not.  Rather,

Section 230 makes a clear distinction between persons and entities who report to OPMC or

participate in OPMC proceedings in good faith without malice, who are shielded from civil

liability, and those who participate in bad faith or with malice, who the Section 230 explicitly

acknowledges should face civil liability.  It strains credulity to argue that Physicians – who are

the victims and suffer the serious economic and professional consequences of bad faith reports to

OPMC and bad faith conduct in connection with OPMC proceedings – are not within the class of

persons protected by a statute that recognizes that persons making bad faith reports to OPMC

should be subject to civil liability.

The *Lesesne* court's analysis that Section 230 is "directed not toward benefiting doctors

who have had false reports made against them; it is directed toward protecting individuals who

have made complaints to the medical board" completely writes the "in good faith" qualifier out of the statute. *Lesesne* at 229. And it flies in the face of the text of Section 230, which provides only limited protection to those persons and entities who make reports *in good faith*. Thus, Nationwide's and the *Lesesne* court's analyses completely ignore the crux of Section 230, which is the balance struck by the legislature between protecting persons and entities who make reports to OPMC and participate in OPMC proceedings in good faith by precluding civil liability for such good faith activities, while protecting physicians from bad faith reports and conduct by subjecting bad faith actors to civil liability.

Moreover, Section 230 contains a number of provisions the clear purpose and effect of which are to protect physicians from being improperly sanctioned by OPMC. For example, Section 230:

- Recognizes that participants in investigations of physicians pursuant to Section 230 are only insulated from civil liability to physicians if their work is performed without malice and with a reasonable belief that their actions or recommendations were warranted based on the facts presented (N.Y. Pub. Health Law § 230(8);

- Requires that physicians be given notice of reports made against them (*See*, *e.g.* N.Y. Pub. Health Law §§ 230(10)(a)(3)(A), 230(10)(c) [Effective March 31, 2018]);

- Gives physicians the right to respond to reports made against them and to participate and be represented by counsel in proceedings commenced against them (*See*, *e.g.*, N.Y. Pub. Health Law §§ 230(10)(a)(iii)(B), 230(10)(c) [Effective March 31, 2018]);

- Requires that exculpatory information or documentation be disclosed to physicians (*See*, *e.g.*, N.Y. Pub. Health Law §§ 230(10)(d-1) [Effective March 31, 2018]);

- Permits physicians to have determinations against them reviewed by an administrative review board (*See* N.Y. Pub. Health Law § 230(10)(i) [Effective March 31, 2018]);

- Permits physicians to seek dismissal of charges against them if they are not timely pursued by OPMC (*See*, *e.g.*, N.Y. Pub. Health Law § 230(10)(j) [Effective March 31, 2018]).

14

These provisions make clear that Section 230 is designed not, as Nationwide argues, to encourage baseless bad faith reporting, but to strike a balance between encouraging responsible, good faith reporting and investigation of reports against physicians, and deterring bad faith reporting and other forms of bad faith conduct against physicians.

The totality of Section 230's provisions demonstrate that its purpose is both to encourage good faith reports and investigations and to address legitimate concerns regarding physicians, while protecting physicians from bad faith conduct by participants in the OPMC process, including those reporting alleged misconduct to OPMC.  Section 230 clearly draws this distinction and recognizes that persons making bad faith reports against physicians or engaging in other forms of bad faith conduct with respect to OPMC should be subject to civil liability for their conduct.  The balance struck by the legislature in Section 230 was obviously intended to protect both the public and physicians, who clearly are within the class of persons Section 230 was intended to benefit.

2.     The Private Right Of Action For Bad Faith Reporting
        To OPMC Promotes The Purpose Of Section 230

As with the first factor, the only way one could argue or find that the imposition of a private right of action for bad faith reporting to OPMC would be contrary to the purpose of Section 230 would be to ignore Section 230's "in good faith" qualifier, which necessarily recognizes that civil liability for bad faith reporting to OPMC is appropriate.  Nationwide argues, and the *Lesesne* court reasoned, that "the purpose of § 230(11)(b) was to 'encourage complaints' and to address the reluctance of individuals 'to provide information regarding errant doctors because of a fear of litigation.'"  (*See* Moving Brief at 8 (citing *Lesesne*).)  Nationwide then argues, again based on the holding in *Lesesne*, that "an implied right of action would, therefore, be counter to the legislative purpose because it would 'chill such complaints.'"  (*Id.*)  However,

15

it would be absurd to suggest that the legislative purpose was to encourage *bad faith* reports against physicians.  That is, however, necessarily the premise of Nationwide's and the *Lesesne* court's argument that the existence of a private right for *bad faith* reports would thwart the statutory purpose.  And that premise is even more absurd given that Section 230 recognizes that civil liability should be available against only those who make reports to OPMC in *bad faith*.

Moreover, bad faith is a standard that goes to whether the person or entity submitting the report had a legitimate basis to believe that the report was justified when it was made.  Thus, the private right of action for bad faith reporting to OPMC does not "chill such complaints" by giving reporters legitimate reason to fear that their report will be found to impose civil liability at some future date so long as they act in good faith at the time they make a report, which is obviously not a burdensome standard, nor one that is unfair to the reporter, especially a sophisticated reporter like Nationwide.

Conversely, the rule that Nationwide advocates for – absolute immunity for bad faith reports to OPMC – would clearly thwart the legislative purpose of Section 230.  The ability to submit bad faith reports to OPMC with impunity would necessarily convert a professional conduct scheme intended to address legitimate threats to the public into a venue for the avenging any form of professional or private vendetta against a physician by making a bad faith report to OPMC.  Further, such a scheme would necessarily result in the limited resources of OPMC being diverted to investigation of bad faith reports that have no relation to legitimate public safety concerns, and therefore would necessarily deter OPMC from identifying and addressing actual threats.  This is especially significant given that Section 230 requires that OPMC conduct a preliminary review of *every* report made to OPMC.  *See* N.Y. Pub. Health law § 230(10)(a)(i)(B).

Deterring bad faith reports to OPMC through civil actions for bad faith reporting to OPMC clearly promotes the legislative purpose of Section 230 by protecting good faith reporters from civil liability while providing a remedy to physicians who are victims of bad faith reports, and reducing the likelihood that OPMC will have to spend time and limited resources on useless investigations, while being unable to pursue legitimate threats to public safety.

     3.     The Private Right Of Action For Bad Faith Reporting To OPMC
               Is Consistent With The Purpose Of The Legislative Scheme

As set forth in Part II(B)(2), *infra*, encouraging good faith reporting and discouraging bad faith reporting to the OPMC clearly promotes the legislative purpose of establishing a fair and efficient regime for reporting legitimate public safety issues with respect to physicians' practice of medicine.  The third factor, whether the creation of a private right of action would be consistent with the legislative scheme leads to the same conclusion – that the encouragement of good faith reports to OPMC and the discouragement of bad faith reporting is entirely consistent with the legislative scheme.

Nationwide and the *Lesesne* decision both bizarrely focus myopically on a single aspect of the legislative scheme, namely that proceedings before OPMC are confidential.  (*See* Moving Brief at 8-9 (citing *Lesesne*); *Lesesne*, 918 F. Supp. At 229.)  This single aspect of the legislative scheme established by Section 230 cannot vitiate the totality of the statutory scheme, which strikes a careful balance between the desire to encourage good faith reporting and investigation of professional misconduct by physicians, while protecting physicians from bad faith and unreasonable reporting and investigations.  *See*, *e.g.*, N.Y. Pub. Health Law §§ 230(8) (shielding members of a committee on professional conduct and employees of the board of professional conduct from civil liability only for actions or recommendations made without malice and with a reasonable belief after reasonable investigation that the action or recommendation was

warranted); 230(16) (shielding persons who assist the department as consultants, expert witnesses, administrative officers or monitors in the investigation, prosecution or hearing of alleged professional misconduct, licensure matters, restoration proceedings, probation, or criminal prosecutions for unauthorized practice from civil liability only for actions taken without malice); 230(11)(g) (shielding members of physician committees of the Medical Society of the State of New York, the New York State Osteopathic Society or a county medical society from civil liability only for actions taken without malice).

The argument by Nationwide, and the holding by the *Lesesne* court, that civil liability for persons or entities that make bad faith reports to OPMC would be inconsistent with the legislative scheme of Section 230 solely because proceedings before OPMC are confidential is belied by the myriad other provisions of Section 230 that provide protections for physicians against unfair and bad faith proceedings against them, and recognize that persons participating in the process with malice or in bad faith should be subject to civil liability.

Moreover, the confidentiality of OPMC proceedings presents, at most, a proof or evidentiary issue that a plaintiff may overcome in various ways. It *does not* present an insurmountable obstacle to a civil action for bad faith reporting to OPMC that could possibly justify granting impunity to bad faith reporters to OPMC, or dismissal of a complaint at the pre-discovery stage. Significantly, Nationwide has self-servingly submitted the OPMC Report to the Court, and has thereby waived any objection to its admission in this case, including those portions Nationwide seeks to conceal through its selective redaction of the document. Nationwide provides no explanation, much less justification, why those portions of the OPMC Report that it deems helpful to its Motion are not confidential, but those portions that it tacitly concedes are helpful to Dr. Haar's case are confidential and may not be admitted in this case.

(*See generally* Moving Brief, Balzan Decl.)  Nationwide has further offered to provide the unredacted OPMC Report to the Court *in camera*, thereby confirming that the unredacted OPMC Report may be relied upon by the parties, and thereby breaching any confidentiality that might have otherwise attached to it and waiving any objection to its use in this action.  (*See* Balzan Decl. Ex. A.)  Nationwide simply cannot attempt to use some or all of its OPMC Report offensively to dismiss this action at the pre-discovery stage while simultaneously arguing that one of the primary bases to dismiss the Complaint is that the OPMC Report may not be disclosed to or relied upon by Dr. Haar.

In any event, the OPMC Notice already in Dr. Haar's possession contains a description of the allegations made against Dr. Haar in the OPMC Report, and Dr. Haar has knowledge of the allegations made against him in the OPMC Report as a result of his participation in the OPMC investigation and hearing concerning the OPMC Report.  (*See* Haar Decl. ¶ 2.)  Mr. Balzan also states under penalty of perjury that he prepared and submitted the OPMC Report.  (*See* Balzan Decl. ¶ 3.)  A deposition of Mr. Balzan therefore would provide evidence of the contents of the OPMC Report.  The OPMC Notice submitted by Nationwide also shows that Nationwide submitted its allegations about Dr. Haar to the NICB, a private entity which represents yet another source of information about the content of the OPMC Report.  (*See* Balzan Decl. Ex. A.)

*     *     *

For these reasons, each of the factors relevant to an analysis whether a private right of action is available to a plaintiff under a New York State statute lead to the same conclusion reached by the First Department in *Foong* – a private right of action exists pursuant to Section 230 for bad faith reporting to OPMC.

C.     **The Complaint Properly Alleges Bad Faith Reporting To OPMC**

It is significant – and telling – Nationwide does not explicitly argue that Dr. Haar has not

properly pled a claim for bad faith reporting to OPMC under Section 230.  (*See generally*

Moving Brief.)  In fact, Nationwide goes to great lengths to set forth the pleading requirements

under *Iqbal*, 556 U.S. 662, *Twombly*, 550 U.S. 544, and other cases, but never attempts to

explicitly argue that Dr. Haar has not satisfied those requirements with respect to his cause of

action for bad faith reporting to OPMC.  (*See* Moving Brief at 6-11.)  The reason is clear:  the

Complaint properly satisfies all applicable pleading standards and properly alleges that

Nationwide made bad faith reports to OPMC about Dr. Haar.

The Complaint alleges that Nationwide made false reports of misconduct to OPMC

against Dr. Haar in bad faith.  (*See* Complaint ¶¶ 49-58.)  The Complaint sets forth the

allegations made by Nationwide to OPMC.  (Complaint ¶¶ 49-54.)  It identifies with specificity

the patients (the names of whom were omitted from the Complaint to preserve their privacy with

respect to medical treatment) who were the subject of the OPMC Report and the issues that were

reported with respect to each patient.  (*Id.*)  The Complaint also identifies with specificity the

allegations made in the OPMC Report with respect to Dr. Haar and his medical practice.  (*Id.*)

These allegations were made upon information and belief not because Dr. Haar was not aware of

the exact claims made to OPMC.  (*See* Haar Decl. ¶ 3.)  Dr. Haar was fully aware of the

allegations made against him because they were set forth clearly in the OPMC Notice (*see* Haar

Decl. ¶ 2) and because he participated in the OPMC investigation and hearing on those

allegations.  (*Id.* ¶ 2.)  For example, the Complaint alleges that the OPMC Notice informed Dr.

Haar that:

- The amount of time Dr. Haar expended in performing surgical procedures on specific patients was insufficient given the nature and complexity of the surgeries performed.  (Complaint ¶ 50.)

- Specific patients received unnecessary post-operative anesthetic treatment that was improper and Dr. Haar was responsible for their receiving the allegedly improper treatment.  (*Id.* ¶ 51; Haar Decl. Ex. A.)

- The surgical procedures performed on specific patients were performed prematurely.  (*Id.* ¶ 53.)

- Dr. Haar's employment status with certain professional corporations owned by him rendered the professional corporations ineligible to receive payment of no-fault claims pursuant to 11 NYCRR § 65-3.16(a)(12) and *State Farm v. Mallela*, 4 N.Y.3d 313 (2005).  (*Id.* ¶ 54.)

The portion of the allegations about the OPMC Report that was made "upon information and belief" was the portion alleging that it was Nationwide that had submitted the OPMC Report. (*See* Haar Decl. ¶ 3.)  While the identity of the person or entity submitting the OPMC Report against Dr. Haar was not included in the OPMC Notice, Dr. Haar believed, with good cause, that Nationwide submitted the OPMC Report.  (*Id.*)  The basis for that belief is clearly alleged in the Complaint.  For example, the Complaint alleges that:

- Nationwide was the only insurer that issued insurance policies covering the patients and procedures that were the subject of the OPMC Report.  (Complaint ¶ 62.)

- Nationwide was the only insurer to which Dr. Haar submitted claims for the patients and procedures that were the subject of the OPMC Report.  (*Id.* ¶ 63.)

- The OPMC Notice stated that OPMC had received complaints against Dr. Haar based on "operative reports and corresponding billing," Nationwide was provided the operative reports and corresponding billing with respect to all of the patients and procedures that were the subject of the OPMC Report, and Dr. Haar had not provided the operative reports and corresponding billing for all of the patients to any other person or entity at the time the OPMC Notice was received by Dr. Haar. (*Id.* ¶¶ 64-66.)

- Nationwide would potentially derive a benefit from an investigation into whether entities owned by Dr. Haar were ineligible to receive reimbursement for no-fault insurance claims because the entities submitted significant claims to Nationwide. (*Id.* at 67.)

These allegations clearly provide "a statement of the facts upon which the belief is founded," which Nationwide acknowledges is the only burden applicable to the Complaint's allegations

made "upon information and belief" at the pleadings stage in this Court. (*See* Moving Brief at 7 (citing *Munoz-Nagel*, 2013 WL 1809772.)  Significantly, it is now conclusively established and undisputed that Dr. Haar was correct that Nationwide submitted the OPMC Report because Nationwide has acknowledged that fact in its Moving Brief and the Balzan Decl., and has disclosed the OPMC Report by attaching a copy to the Balzan Decl., albeit redacted to show only those portions of the report that Nationwide considered helpful to its arguments at this stage of litigation. (*See* Balzan Decl. Ex. A.)

The Complaint alleges that the allegations in the OPMC Report were false. (Complaint ¶ 68.)  To support this allegation, the Complaint states that OPMC conducted a detailed investigation of each of the allegations contained in Nationwide's report without any further action or imposing any disciplinary findings with respect to Dr. Haar. (*Id.* ¶¶ 69-70.)  These allegations clearly provide a reasonable basis, under any applicable pleading standard, for Dr. Haar's allegation that Nationwide's reports to OPMC were false.

The Complaint also alleges "upon information and belief" that Nationwide had no good faith basis to make the allegations contained in the OPMC Report, and that Nationwide submitted the OPMC Report in bad faith. (Complaint ¶¶ 74, 112.)  Whether Nationwide made its OPMC Report in bad faith is a fact to be proven at trial after discovery.  However, the Complaint alleges a myriad of facts to support the allegation that the OPMC Report was made in bad faith.  For example, the Complaint alleges that Nationwide was in a unique position to determine whether the allegations made by Nationwide against Dr. Haar in the OPMC Report were true because, as the insurer to which claims were submitted for the patients and procedures that were the subject of the OPMC Report, Nationwide had the right to request additional documentation, information and details regarding the patients through:

- requests for documents;

- examinations under oath of Dr. Haar, the patients, persons who participated in the procedures at issue, and Dr. Haar's medical practices;

- independent medical examinations of the patients; and

- use of its own medical "experts" and other resources and expertise that Nationwide has at its disposal;

all pursuant to the no-fault insurance verification process, but Nationwide did not avail itself of any of these rights.  (*Id.* ¶¶75-106.)  These allegations supporting Dr. Haar's "information and belief" that Nationwide made its report to OPMC in bad faith clearly set forth the "facts upon which the belief is founded" and state a claim that is "plausible on its face."  (*See* Moving Brief at 6 (citing, *inter alia*, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (S.D.N.Y. 1993); *Munoz-Nagel*, 2013 WL 1809772, at *3.)

Finally, the Complaint alleges that Dr. Haar suffered damages as a result of Nationwide's bad faith reporting to OPMC.  (*Id.* ¶ 116.)

In sum, the Complaint clearly alleges each of the elements of Dr. Haar's bad faith reporting claim under Section 230, as well as ample facts supporting those allegations made upon information and belief with respect to each element.   And Nationwide does not dispute that the Complaint does so.

        **D.**    **The *Noerr-Pennington* Doctrine Does Not Preclude Dr. Haar's Bad Faith Reporting Claim**

The Noerr-Pennington doctrine does not apply to Dr. Haar's claim based on Nationwide's bad faith reporting to OPMC.  And even if it did apply, the doctrine is subject to exceptions that would clearly preclude dismissal of Dr. Haar's claim.

1.      The *Noerr-Pennington* Doctrine Does Not Apply
        Where, As Here, The Statute Authorizing Submissions To
        <u>The Government Expressly Authorizes Only Good Faith Reporting</u>

Nationwide has not demonstrated that the *Noerr-Pennington* doctrine applies to Dr.

Haar's claim for bad faith reporting to OPMC under Section 230.  Nationwide has not cited a

single case holding that the *Noerr-Pennington* doctrine immunizes insurers (or any others) from

submitting bad faith reports to OPMC.  (*See generally* Moving Brief.)  Moreover, Nationwide

has not cited a single case where the cause of action that a court found barred by the *Noerr-*

*Pennington* doctrine was a cause of action established by the same legislation establishing the

avenue of "petitioning" the government that was utilized by the reporting party, or where the

statute creating the reporting scheme authorized only good faith submissions and expressly

provided that bad faith submissions would subject the submitter to civil liability.  (*Id.*)

Significantly, many of the cases cited by Nationwide acknowledge that while the *Noerr-*

*Pennington* doctrine generally applies in the antitrust, anti-competitive and state law tort

contexts, there is no authority for mechanically applying it outside those contexts, as Nationwide

tries to do here.

Nationwide goes to great length in the Moving Memo to argue that it can submit false,

bad faith reports to OPMC about physicians with impunity.  (*See* Moving Brief at 7-11.)  In

doing so, Nationwide seeks to invoke the so-called *Noerr-Pennington* doctrine, which originated

with two cases decided by the United States Supreme Court in the antitrust context, *Eastern R.*

*Presidents Conf. v. Noerr Motor Freeight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers*

*v. Pennington*, 381 U.S. 657 (1965).  *Noerr* held that efforts to lobby for legislative action could

not constitute prohibited anticompetitive conduct under the Sherman Antitrust Act even if

motivated by a desire to harm competition.  *Noerr Motor Freeight, Inc.*, 365 U.S. at 139-140.

The Court reasoned that the right to petition the government implicated constitutional

considerations, and that otherwise lawful conduct could in connection with lobbying efforts could not give rise to antitrust liability even if they involved sharp business practices and were part of a scheme to harm competitors and gain a competitive advantage over them. *Id.* at 142. Here, Dr. Haar's claim for bad faith reporting to OPMC is not based on Nationwide's *motive* (although it seems clear that its motive was to harm Dr. Haar and its false, bad faith OPMC Report had its desired effect). Rather, Dr. Haar's claim is based on his allegations that the complaints made by Nationwide in the OPMC Report were false and known to Nationwide to be false, and they were made in bad faith, *i.e.*, in violation of Section 230 which shields only good faith reports and recognizes that bad faith reports are subject to civil liability.

The *Noerr* decision *did not* rule that statutes requiring that reports to governmental agencies be made in good faith, or statutes imposing liability for bad faith reporting to governmental agencies were unconstitutional, or that individuals or entities had immunity from liability for bad faith reporting to governmental agencies. *See generally*, *Noerr*, 365 U.S. 127. And the indisputable fact that governmental agencies can impose requirements that submissions made to them be done in good faith requires no citation. In fact, there are myriad examples, of which the Court can take judicial notice, of governmental agencies who impose penalties on persons who make false submissions or submissions in bad faith to them. A rule that any person or entity could make false, bad faith statements and submissions to governmental agencies with constitutionally-imposed impunity would have obvious and vast negative consequences and would render perjury, contempt of court, and contempt of Congress constitutionally protected activities. Similarly, such a rule would render statues such as New York Penal Law § 240.50 imposing criminal or civil liability for filing false police reports or submitting false fire or emergency reports to police or fire departments unconstitutional. And Federal Rule of Civil

Procedure 11 and the analogs applicable in every state court would be unconstitutional.  All because, under Nationwide's interpretation of the *Noerr-Pennington* doctrine, any person or entity could submit false, bad faith claims to any governmental agency with absolute immunity and impunity. The incorrectness and absurdity of this argument is self-evident.

In this case, there is a statutory scheme (Section 230) which, as set forth more fully in Sections II(A) and (B), *supra*, provides limited protection from civil liability for persons who make reports to OPMC or participate in OPMC proceedings in good faith and without malice, and thereby recognizes that those who report or participate in bad faith or with malice should be and are subject to civil liability.  Sections II(A) and (B) also establish that the private right of action for bad faith reporting to OPMC recognized by the First Department in *Foong* is both consistent with the purpose of Section 230 and promotes its purpose by promoting legitimate complaints to OPMC while deterring bad faith complaints, and thereby allowing OPMC to devote its limited resources to investigating and sanctioning physicians who pose (or reasonably may pose) legitimate risks to public safety.

Nationwide des not cite a single case ruling that such a statutory scheme is barred by the *Noerr-Pennington* doctrine, or holding that individuals who make bad faith reports to governmental agencies are immune from civil liability.  (*See generally* Moving Memo.)

Rather, the cases cited by Nationwide stand for the proposition that lawful petitioning of the government with an anticompetitive *motive* cannot give rise to antitrust or tort liability based on true statements made in good faith to such agencies.  For example, *Caesars Entertainment Operating Co., Inc. v. Appaloosa Inv. L.P. I*, 2015 N.Y. Misc. Lexis 2542, 48 Misc. 3d 1212(A) (Sup. Ct. N.Y. Co. July 20, 2015) held that the plaintiff could not maintain tortious interference with business relations claims based on "petitioning legislatures, administrative bodies, and the

courts even if the defendant's actions had an anticompetitive or otherwise injurious purpose or effect." 2015 N.Y. Misc. LEXIS 2542, at *14, 48 Misc. 3d 1212(A), at 4. The defendant had made claims to a Las Vegas gambling regulatory agency that the plaintiff had engaged in fraudulent transfers, made threats of litigation against the plaintiff that were reported in the press. *Id.* at *4-*9. There was no suggestion that the regulatory agency imposed an obligation that submissions be made in good faith, and there was no claim made pursuant to the agency's authorizing statue or its rules. *See generally id.* The *Caesars Entertainment* court noted that the *Noerr-Pennington* doctrine originated in the antitrust context, and specifically noted that while it has been expanded to claims under 42 U.S.C. § 1983 and to tortious interference claims, "[t]he Second Circuit has yet to decide whether the *Noerr-Pennington* doctrine . . . must be applied mechanically in cases outside the antitrust area." *Id.* at *15.

*Ichan v. Raynor*, 32 Misc. 3d 1224(A), 2011 Misc. LEXIS 3724 (Sup. Ct. N.Y. Co. June 16, 2011), involved tortious interference and injurious falsehood claims based on a lawsuit filed by the defendant and the defendant's submission of a form 13D to the United States Securities and Exchange Commission (the "SEC") reporting the filing of the lawsuit. *Id.* at *7, *10. The plaintiff alleged that the timing of the filing of the lawsuit and the submission of the form 13D lowered the demand for bonds that the plaintiff was offering to the public. *Id.* at *5. The court in *Ichan* ruled that the *Noerr-Pennington* doctrine barred claim for *tortious interference* based on the lawsuits and SEC filing and that the injurious falsehood claim was barred by the absolute immunity given to statements made in a lawsuit and related statements (the form 13D reported the lawsuit to the SEC). *Id.* at *8-*9, *11-*15. The court did not discuss the contents of the lawsuit, nor was there any discussion of false or bad faith claims made in the litigation because the court recognized the unique, absolute immunity (not applicable here) granted to litigation

statements and apparently found that its application to the lawsuit and the form 13D (which the court found was "pertinent to the litigation") rendered such an analysis unnecessary.  *Id.*

    *Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.*, 01 Civ. 10102 (LAP), 2002 U.S. Dist. LEXIS 17287 (S.D.N.Y. Sept. 19, 2002), involved claims for tortious interference with economic advantage and unfair competition based on the defendant's making certain reports to the United States Food and Drug Administration about the plaintiff's products based on information obtained pursuant to confidentiality and non-disclosure agreements that allegedly precluded the defendant from using the information for such purposes.  *Id.* at *11-*14.  The court recognized that the *Noerr-Pennington* doctrine precludes claims for tortious interference and unfair competition based on "conduct seeking to influence government action."  *Id.* at *39.  There was no claim based on bad faith reporting to a government agency.

    *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993), involved claims that a motion picture company engaged in anticompetitive activity in violation of the antitrust laws by suing a hotel chain for copyright infringement based on the hotel's offering its guests the opportunity to view videotaped copies of the motion picture company's films in individual hotel rooms for a fee.  *Id.* at 51-52.  The Plaintiff argued that the defendant's lawsuit was a mere sham intended to interfere with the plaintiff's business.  *Id.* at 52.  The court recognized that the *Noerr-Pennington* doctrine precludes antitrust or unfair competition claims based on litigation unless the defendant's conduct satisfies the "sham" exception to the doctrine. *Id.* at 56-62.  The court then analyzed the copyright infringement claim and determined that the sham exception did not apply, so the general rule that a party may not bring an anti-competitive claim based on the filing of litigation precluded the plaintiff's claim.  *Id.* at 62-65.

*LightSquared Inc. v. Deere & Co.*, 13 Civ. 8157 (RMB), 2014 U.S. Dist. LEXIS 14752 (S.D.N.Y. Jan. 31, 2014) involved state law tort and breach of contract claims based on representations to the United States Federal Communications Commission by the defendants about the ability of the plaintiff's nationwide wireless network to safely coexist with the defendants' global positioning (GPS) products. *Id.* at *2-*6. The court in *LightSquared* ruled that an adversary proceeding filed in bankruptcy court should be withdrawn because it involved an issue of significant interpretation of federal law, *i.e.*, whether the *Noerr-Pennington* doctrine applied to breach of contract claims. Specifically, the *Lightsquared* court recognized that while the *Noerr-Pennington* doctrine has been applied to state law tort claims, "the Second Circuit 'has yet to decide whether the *Noerr-Pennington* doctrine . . . must be applied mechanically in cases outside the antitrust area." *Id.* at *11 (citing *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 594 (S.D.N.Y. 2010)). The court also recognized that several courts have declined to extend the *Noerr-Pennington* doctrine to claims of promissory estoppel, breach of contract, and breach of implied covenant. *Id.* at *12-13 (collecting cases).

*Singh v. NYCTL 2009-A Trust*, 683 F. App'x 76 (2d Cir. Mar. 21, 2017) dismissed a plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act based on the defendant's attempts to collect attorneys' fess in connection with foreclosures on real property, which the court found were preliminary to litigation, and therefore subject to the absolute privilege granted to statements made in connection with litigation. *Id.* at 76-77.

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 707 N.Y.S.2d 647 (2d Dep't 1999) involved claims of tortious interference with prospective economic advantage, *prima facie* tort and deceptive trade practices and sought to enjoin the defendant from participating in any further public hearings regarding the rezoning of a piece of

29

real property owned by the plaintiff, based on the defendants' opposition to the rezoning before

various governmental agencies.  There were no claims for bad faith submissions to a government

agency who's enabling statue protected only good faith submissions.  The court recognized that

the *Noerr-Pennington* doctrine protects efforts to petition the government even if the petitions

are motivated by anticompetitive intent, and even where the efforts to influence government is

part of a broader scheme to hinder competition.  268 A.D.2d  at 107.  However, the court

recognized that frivolous submissions to government agencies are not protected by the *Noerr-*

*Pennington* doctrine even where the claims asserted are those that the doctrine has traditionally

applied to, such as tortious interference or unfair competition-based claims.  *Id.* at 109.

　　In sum, the cases cited by Nationwide recognize that the *Noerr-Pennington* doctrine

provides limited (*see* Section II(D)(2), *infra*) immunity for persons petitioning the government

from certain types of claims (primarily torts involving unfair competition such as antitrust,

tortious interference and unfair competition) "regardless of their motive."  (*See* Moving Memo at

10.)  *None* of the cases cited by Nationwide support its argument that the *Noerr-Pennington*

doctrine bars Dr. Haar's claim pursuant to Section 230 for bad faith reporting to OPMC.  Each of

the cases involved antitrust or state law tortious interference claims or unfair competition claims,

which are the quintessential applications of the *Noerr-Pennington* doctrine except for

*LightSquared*, *supra*, which recognized the limits of the doctrine's applicability outside those

contexts.  None of the cases suggest that the act of "petitioning the government" in bad faith

(with regard to making false claims, not with regard to intent t harm a competitor), or in a

manner that the statute authorizing submissions expressly provides is subject to liability (*i.e.*, in

this case, bad faith reporting to OPMC) can be immunized by the doctrine.  If that were the case,

then filing a false police report, making a false report of a fire or other emergency, committing

perjury, making false statements to police or other investigators, making false statements on passport applications, making false statements under oath to Congress, submitting a false tax return and an endless list of other false and bad faith submissions to the government would all be constitutionally protected activities under the First Amendment, and individuals and entities could lie to the government with impunity.  Clearly that is not the case.

Nationwide has not identified any authority for its proposition that where a statute authorizes only good faith reporting to a government authority, and recognizes that bad faith reporting will subject the reporter to civil liability, the *Noerr-Pennington* doctrine grants immunity to a person or entity who makes a bad faith report, or that a claim based on a false and bad faith report to the authority is barred by the *Noerr-Pennington* doctrine.  Accordingly, Nationwide has not shown that Dr. Haar's claim for bad faith reporting to OPMC pursuant to Section 230(11)(b) may be dismissed based on the *Noerr-Pennington* doctrine.

> 2.    Even If The *Noerr-Pennington* Doctrine Did Apply
> To Claims Under Section 230 Dr. Haar's Claim Would
> Be Permitted Under The Sham Exception To The Doctrine

The crux of the *Noerr-Pennington* doctrine is that a party petitioning the government cannot be held liable solely based on a bad *motive*.  This is a completely distinct question from whether a party petitioning the government can be held liable based on a culpable level of bad faith in petitioning the government, especially where the statute authorizing submissions to the governmental authority expressly recognizes that civil liability is available for bad faith reporting.  However, even if this court were to extend the doctrine to such claims for the first time, the well-recognized "sham" exception to the *Noerr-Pennington* doctrine would still preclude dismissal of Dr. Haar's claim pursuant to Section 230.  The sham exception to the *Noerr-Pennington* doctrine was initially recognized by the United States Supreme Court.  It precludes application of the doctrine even where it would otherwise apply for acts by petitioning

parties which have no basis in fact, and which the petitioning party does not honestly believe. This is the essence of bad faith, and exactly what Dr. Haar alleges in the Complaint. Thus, even if the *Noerr-Pennington* doctrine did apply as broadly outside the antrtrust and tort context as Nationwide suggests (which no court has yet round), bad faith reports to OPMC would not be protected by the doctrine because they clearly would fall within a well-established exception to the doctrine.

Even in the antitrust context, where the United States Supreme Court has squarely held that the *Noree-Pennington* doctrine provides its most robust protection for efforts to petition the government from liability, and even where the petitioning of the government consists of filing a lawsuit, an activity that receives the most broad immunity from liability for false and bad faith statements and conduct, the Supreme Court recognized an exception where the litigation was not reasonably calculated to elicit a favorable outcome, and where the intent was to use the government process, as opposed to the outcome of that process, to injure the plaintiff. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. at 60-61, 113 S. Ct. at 1928. The *Prof'l Real Estate Investors, Inc.* case involved antitrust claims and litigation (a situation far removed from this case) and therefore resulted in the Supreme Court speaking in terms of probable cause to bring a lawsuit and efforts to injure the business of a competitor. *Id.* The difference in context underscores the fact that, as set forth in Section II(D)(1), *supra*, the *Noerr-Pennington* doctrine does not have application in situations like this case where an individual brings a claim based on a statute that specifically authorizes only good faith reporting to a government agency and expressly recognizes that bad faith reporters should be subject to civil liability. However, even if it did, in the context of Dr. Haar's claim pursuant to Section 230 and

32

the allegations in the Complaint, the sham exception to the *Noerr-Pennington* doctrine clearly applies.

Dr. Haar has alleged that Nationwide submitted the OPMC Report knowing, or under circumstances in which it reasonably should have known that the allegations in the OPMC Report were false and meritless.  (*See* Complaint ¶ 68.)  It also alleges that Nationwide made the OPMC Report in bad faith to use the OPMC reporting and investigation process to discourage Dr. Haar from making claims for reimbursement under the no-fault laws.  (*Id.* ¶¶ 108-117.) These allegations bring Dr. Haar's claim squarely within the scope of the sham exception to the *Noerr-Pennington* doctrine.[4]

Accordingly, even if the Court were to find, for the first time, that Dr. Haar's claim is subject to application of the *Noerr-Pennington* doctrine applies to a claim for bad faith reporting to a governmental agency that prohibits such reporting, the Court should apply the sham execption to the doctrine, and Nationwide's motion to dismiss Dr. Haar's bad faith reporting claim pursuant to Section 230 based on the *Noerr-Pennington* doctrine should be denied.

## III.    DR. HAAR'S DEFAMATION CLAIM SHOULD NOT BE DISMISSED

For the reasons set forth above, neither the "absolute privilege" advocated for by Nationwide with respect to its false and defamatory statements to OPMC about Dr. Haar, nor the confidentiality applicable to proceedings before OPMC shield Nationwide from liability for its defamatory statements against Dr. Haar in the OPMC Report (and apparently in its statements to the New York Insurance Frauds Bureau and NICB).  Moreover, given Nationwide's access to information about the claims, patients, procedures and entities relating to Nationwide's false

---

[4]    To the extent the Court finds that these concepts are not adequately fleshed out in the existing Complaint, Dr. Haar respectfully requests leave to replead his allegations to address any deficiencies noted by the Court. However, there can be no dispute that Dr. Haar has alleged in substance that the OPMC Report was objectively meritless and filed with an intent to misuse the OPMC process to injure Dr. Haar.

statements, its statements that Dr. Haar performed surgeries too quickly, administered unnecessary treatments and engaged in insurance fraud are clearly statements of fact, and defamatory *per se* in that they directly defame him with respect to his profession.  The statements clearly were published to OPMC, the New York Insurance Frauds Bureau and NICB, and Nationwide confirms that through the Balzan Decl. and exhibit.  And the fact that Dr. Haar was did not and could not know of Nationwide's false and defamatory statements until he received the OPMC Notice less than a year before he filed this action warrants tolling of the statute of limitations, and tolling the statute of limitations cannot result in any prejudice to Nationwide.

## CONCLUSION

For the foregoing reasons, Nationwide's Motion should be denied in  its entirety, and the Court should grant Dr. Haar such other and further relief as the Court deems just and proper.

Dated: Westchester, New York
       September 26, 2017

GREGORY ZIMMER, ESQ.



_____/s Gregory Zimmer_____

360 Lexington Avenue, Suite 1502
New York, New York 10017
Tel: (914) 402-5683
GZimmer@GZimmerLegal.com
*Attorney for Plaintiff*

34

## CERTIFICATE OF SERVICE

I hereby certify this 26th day of September, 2017, that I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following attorneys of record, and is available for viewing and downloading:

**DUANE MORRIS LLP**
Andrew T. Hahn, Sr.
Ralph Carter
1540 Broadway
New York, New York 10036
Tel.: (212) 692-1000
athahn@duanemorris.com
rcarter@duanemorris.com
*Attorneys for Defendant*
*Nationwide Mutual Fire Insurance Company*

_____/s  Gregory Zimmer_____
Gregory Zimmer, Esq.